UNITED STATES of America,
Plaintiff–Appellee,

v.

Wendall PENASS, Defendant–Appellant.

No. 91–1612.

United States Court of Appeals,
Seventh Circuit.

Argued April 29, 1993.

Decided July 7, 1993.

---

Charles Guadagnino (argued), Office of U.S. Atty., Milwaukee, WI, for plaintiff-appellee.

David Robert Saggio (argued), Gonzalez & Saggio, Milwaukee, WI, for defendant-appellant.

Before POSNER, FLAUM, and KANNE, Circuit Judges.

FLAUM, Circuit Judge.

Wendall Penass was living with Mary Notinokey on the Menominee Indian Reservation of Wisconsin. Early in the afternoon of September 15, 1990, Mary's brother Roger Notinokey, his uncle Calvin Notinokey, Roger's girlfriend Theresa Fish, and her ten-year-old son Tony Junior dropped by Mary's house to socialize. After these four arrived in Theresa's car, all the adults shared an amount of beer that none of the witnesses was able to recall. Having spent most of the afternoon and early evening drinking, Wendall and Roger eventually stopped socializing and started arguing. Although the recollections of the witnesses are somewhat blurred, at some point Wendall found himself on the inside of Mary's house with Roger armed with a wooden club on the outside. Shortly thereafter, Roger began pounding on the door with his club and then smashed a window adjacent to the door. Wendall, who was standing behind that door, sustained damage to his eyes from the flying shards of glass.

Wendall then hurried to the basement, retrieved a maul, and went outside to look for Roger. He thought that he spotted Roger behind the wheel of Theresa's car, which was stuck in a ditch in front of Mary's house. Rushing over to the driver's side, Wendall

swung the flat end of the maul through the open window and struck the driver in the head. The driver, it turns out, was Theresa. Because of the amount of alcohol she had consumed, Theresa had no recollection of getting behind the wheel or of being mauled. However, Tony Junior, who was sitting in the back seat, cried out that Wendall had "killed" his mother, a comment that Wendall did hear. Realizing his mistake, Wendall dropped the maul in the yard and went back inside to await the imminent arrival of the police.

The subsequent trial for assault with a dangerous weapon focused principally on the intent of Wendall in striking Theresa. The jury returned a conviction, and this appeal for ineffective assistance of counsel ensued.

## I.

Wendall contends that he received ineffective assistance because his trial attorney failed to object to hearsay testimony, entered into a prejudicial stipulation regarding the injuries sustained by Theresa, and failed to object to a comment made by the prosecutor during closing argument. Wendall has opted to raise this ineffective assistance claim on direct appeal here rather than in a collateral proceeding under 28 U.S.C. § 2255. Because this court does not take any evidence, the appellant is limited to the trial record for making his argument. "When the only record on which a claim of ineffective assistance is based is the trial record, every indulgence will be given to the possibility that a seeming lapse or error by defense counsel was in fact a tactical move, flawed only in hindsight." *United States v. Taglia,* 922 F.2d 413, 417–418 (7th Cir.1991). In most instances the defendant has a better chance by attempting to enlarge the record in a habeas proceeding. If he files a section 2255 motion and requests an evidentiary hearing, he can call his former counsel as a witness and try to show that the apparent lapses by trial counsel were real rather than tactical. By all accounts, however, Wendall likely would not be able to marshal any extrinsic evidence in support of his ineffective assistance claim; as a conse-

quence, the success of this appeal properly rides on the trial record alone.

To establish ineffective assistance, Wendall must first identify specific acts or omissions of his counsel that demonstrate his attorney's performance fell below an objective standard of reasonableness. Assuming that the representation does not come within the admittedly wide range of legal assistance regarded as professionally competent, Wendall must also establish prejudice, or that there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceedings would have been different. *United States v. Moya–Gomez,* 860 F.2d 706, 763 (7th Cir.1988) (citing *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). A reasonable probability of a different result means one sufficient to undermine confidence in the outcome. *See Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068; *Montgomery v. Petersen,* 846 F.2d 407, 414 (7th Cir.1988).

Wendall's appellate counsel has cited a handful of incidents gleaned from the trial record when trial counsel for Wendall should have objected to testimony on hearsay grounds. None of these, however, suggests that the performance of Wendall's trial counsel was inadequate. For example, appellate counsel contends Tribal Police Officer Tousey's testimony regarding Wendall's confession to him was hearsay and that the confession itself was made in violation of his *Miranda* rights. Having arrived on the scene shortly after Theresa had been coldcocked, Tousey asked what was up. Wendall blurted out: "I know I did it. I know I got to go down. I hit her in the head with an ax. I didn't mean to hit her in the head with an ax. I meant to hit Roger in the head with an ax." (Tr. 13). Since this acknowledgement constitutes a statement by the defendant (a party opponent) admissible under Fed.R.Evid. 801(d)(2)(A), Wendall's trial counsel had no occasion to raise an objection.[1]

Furthermore, Wendall's appellate counsel has indicated that the statement should have been suppressed because Wen-

---

1. Similar statements by three other government witnesses (Tony, Calvin, and FBI Special Agent Martin) that Wendall's appellate counsel challenged were admissible for the same reason.

**1230**

dall spoke prior to receiving any *Miranda* warnings. It is not immediately clear whether appellate counsel is arguing that Wendall's trial counsel should have moved to suppress this admission during the course of the trial or in a pretrial motion; however, it really doesn't matter since Wendall volunteered this damning admission prior to being taken into custody or formally interrogated.

■ Wendall also questions the wisdom of his trial counsel's decision to enter into a stipulation with the government regarding the character of the injuries sustained by Theresa. According to the defendant, the excessive detail, the graphic nature of the description, and Theresa's long-term prognosis from her treating physician served only to prejudice Wendall. Given the fact that Theresa herself had already testified to being injured, Wendall contends that the stipulation had no probative value. However, had the treating physician testified, he certainly would have provided a similar level of detail about her injuries. More importantly, the nature of Theresa's injuries, about which she had an extremely limited capacity to testify, were probative of the force used in swinging the maul, which is relevant to Wendall's intent. This evidence may have been particularly probative in light of Wendall's testimony that in swinging the maul, he intended only to scare rather than to hit Roger.

■ Finally, Wendall is challenging his trial counsel's failure to object to a prejudicial comment made by the prosecutor in his closing argument. Specifically, the defendant charges the government with intimating that it could have indicted him for attempted murder. Although the prosecutor initially equivocated at oral argument, he eventually conceded that he did state "[the] defendant didn't swing that ax to scare anyone. He swung that ax to do serious physical injury, maybe even kill a person. We're not here for attempted murder, but it's something maybe someone would think about." In the context of the prosecutor's closing argument, that "someone" can only mean a juror. Because Wendall was charged with assault with a dangerous weapon, the jury is not instructed on the elements of attempted murder. Inviting the jury to entertain thoughts of that crime is very troubling. Having been made aware that the government could have

brought a more serious charge, the jury might even believe that it was somehow obligated—from the perspective of the prosecutor—to convict Wendall of the crime charged. Unquestionably, the prosecutor's engaging in a discussion of uncharged crimes was wholly inappropriate.

However, trial counsel failed to make a contemporaneous objection to the prosecutor's remark during closing argument, which would normally trigger a review for plain error. *United States v. Lewis,* 797 F.2d 358, 369 (7th Cir.1986), *cert. denied,* 479 U.S. 1093, 107 S.Ct. 1308, 94 L.Ed.2d 162 (1987). According to this stringent standard, we reverse a conviction "only if a miscarriage of justice would otherwise result." *United States v. Hernandez,* 865 F.2d 925, 928 (7th Cir.1989). In light of the overwhelming evidence against Wendall, the ill-considered remark of the prosecutor certainly does not rise to the level of plain error. Of course, inasmuch as this is an ineffective assistance claim, we are asking a somewhat different question, namely whether this incident undermined the validity of the conviction. Measured against the entire trial record, this single comment by the prosecutor also falls short of a showing necessary to demonstrate prejudice.

For the foregoing reasons, the conviction of the defendant is AFFIRMED.