51 F.3d 275
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Wayne O. LOWE, Sr., Petitioner-Appellant,
v.
Gordon A. ABRAHAMSON, Respondent-Appellee.
 No. 92-2020.
 United States Court of Appeals, Seventh Circuit.
 Submitted April 4, 1995.*
Decided April 6, 1995.
 
 Before POSNER, Chief Judge, and FAIRCHILD and KANNE, Circuit Judges.
 
 ORDER
 
 1
 In 1987, Wayne Lowe entered a tavern in Wisconsin and approached his ex-wife and her boyfriend from behind. He then shot each of them in the back of the head. Lowe's ex-wife survived but her boyfriend died. Charged with first degree murder and attempted first degree murder, Lowe pleaded not guilty and not guilty by reason of mental disease or defect. Following a bifurcated jury trial, he was convicted on both counts and found to be responsible for his actions. After exhausting his state appeals, Lowe filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. Sec. 2254. The petition was denied by the federal district court.
 
 
 2
 On appeal, Lowe alleges that 1) the trial court improperly admitted irrelevant, nonprobative, prejudicial evidence; 2) the trial court mishandled the trial so that the petitioner's heat of passion defense was not seriously considered in the guilt phase of the trial; 3) the trial court's evidentiary rulings denied him a full and fair chance to present his defense during the guilt phase of the bifurcated trial; and 4) the trial court denied the petitioner a full and fair chance to present his case during the responsibility phase of the trial. He also asks for a new trial "in the interest of justice."
 
 
 3
 Lowe did not raise the first two issues concerning the admission of irrelevant evidence and the mishandling of the trial before the district court. The government, however, has not argued waiver, choosing instead to address the merits. Accordingly, we do the same. Garlington v. O'Leary, 879 F.2d 277, 282-83 (7th Cir.1989).
 
 
 4
 First, Lowe argues that the trial court allowed the prosecution to present inflammatory evidence that was irrelevant to any disputed issue in the case to evoke sympathy among the jurors. He claims that he was thereby denied the right to a fair trial. Inflammatory statements intentionally made by or elicited by a state prosecutor to improperly prejudice the jury may warrant federal habeas corpus relief if the misconduct was serious enough to deprive the defendant of a fair trial. Rose v. Duckworth, 769 F.2d 402, 405 (7th Cir.1985).
 
 
 5
 Lowe objects to the presentation at trial of a photograph of the murdered victim wearing a hat from his son's Little League baseball team as well as the prosecutor's closing argument, who commented that the shooting turned the victim's brain into "putty." The state appellate court rejected these claims because Lowe failed to object to the evidence and comments at trial.
 
 
 6
 Federal habeas corpus review is barred where a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule unless the prisoner demonstrates cause for the default and actual prejudice from the federal law violation. Coleman v. Thompson, 501 U.S. 722, 729 (1991). Because the state court's finding that Lowe waived his right to object to the prosecutor's closing arguments constitutes an independent and adequate state ground, and Lowe makes no attempt to establish cause or prejudice, we deny relief on this claim.
 
 
 7
 Upon review of the record, however, we note that Lowe did object to the admission of the photograph. (Tr. at 312-13). Nonetheless, we conclude that the trial court did not commit constitutional error. The trial court overruled the objection, finding that the photograph of the deceased was probative and relevant to the government's theory that Lowe was motivated by his jealousy and hatred for his ex-wife's companion. All evidence bearing on guilt is inherently prejudicial to the defendant. United States v. Guyton, 36 F.3d 655, 660 (7th Cir.1994). Moreover, we find nothing improper about the admission of the photograph into evidence and fail to see how its presentation to the jury denied Lowe a fair trial.
 
 
 8
 Lowe also objects to the testimony of the deceased victim's father. The testimony described the victim's personal background, his arrival in Bayfield County, Wisconsin, and his acquaintance with Lowe's ex-wife. The state appellate court found that the testimony was not probative but that the error was harmless because the result of the trial would not have been different had the evidence been excluded. We agree that the admission of this testimony was not inflammatory or unduly prejudicial to the defendant and did not undermine the fairness of the trial.
 
 
 9
 In addition, Lowe argues that the testimony of several witnesses describing the shooting, the medical testimony of the pathologist, physical exhibits of the shooting including an X-ray of the murder victim's skull and the photographs of both of the victims as they lay in a pool of blood after the shootings should not have been admitted. He contends that the testimony and the exhibits had no probative value given that he contested only his intent and not the fact that he shot both victims.
 
 
 10
 The state carried the burden of proving that Lowe intended to kill both of his victims. See Wis.Stat. Sec. 940.01 (1986-87). Despite Lowe's argument to the contrary, the witnesses' testimony describing his actions and demeanor immediately before and after the shootings was highly probative of intent. The evidence establishing the extent of the injuries was also relevant in demonstrating the nature of the crime and the defendant's state of mind at the time of the shooting. See e.g., United States v. Penass, 997 F.2d 1227, 1230 (7th Cir.) (the nature of the victim's injuries was probative of the defendant's intent), cert. denied, 114 S.Ct. 458 (1993). Because the exhibits and testimony were relevant to the issues to be decided by the jury and were presented in a noninflammatory manner, we find no evidence to suggest that Lowe received an unfair trial.
 
 
 11
 Next, Lowe argues that the references to the responsibility phase of the trial during the guilt phase precluded serious consideration by the jury of his heat of passion defense to the first degree murder charges. Under section 940.05(1) of the 1986-87 Wisconsin Statutes, a defendant was guilty of manslaughter if he caused the death of another without intent to kill and while in the heat of passion.[1] The state appellate court relied on State v. Williford, 307 N.W.2d 277 (1981) and Muller v. State, 289 N.W.2d 570 (1980) to conclude that the evidence adduced at trial was insufficient to raise the existence of the heat of passion defense under Wisconsin law and that the instruction for manslaughter should never have been given by the trial court. Accordingly, it declined to address the alleged mishandling of the trial with respect to the heat of passion defense.
 
 
 12
 The state appellate court based its decision solely on state law. Lowe has not challenged that finding in the briefs submitted to this court. Because of the state court decision, the question of whether the trial court precluded serious consideration of the heat of passion defense in the guilt phase of the trial is never reached. Accordingly, we find that this issue has been decided on a substantive state law ground that is independent of the federal question and adequate to support the judgment. Coleman, 501 U.S. at 729. Thus, we have no jurisdiction to address this claim. Moreover, we note that Lowe's request for a new trial in the "interest of justice" pursuant to Sec. 752.35 of the Wisconsin Statutes is simply not cognizable in a petition for federal habeas corpus review.
 
 
 13
 The last two issues which deal with the alleged inequity of the trial court's evidentiary rulings in both phases of the bifurcated trial were raised in the district court. After reviewing the record, we affirm the district court's denial of those claims for the reasons stated in the attached Opinion and Order dated December 5, 1991.
 
 
 14
 Accordingly, the district court's denial of the petition of a writ of habeas corpus is AFFIRMED.
 
 ATTACHMENT
 IN THE UNITED STATES DISTRICT COURT
 FOR THE WESTERN DISTRICT OF WISCONSIN
 
 15
 Wayne O. Lowe, Petitioner,
 
 
 16
 v.
 
 
 17
 Gordon A. Abrahamson, Respondent.
 
 90-C-0964-C
 OPINION AND ORDER
 
 18
 CRABB, District Judge.
 
 
 19
 This is a petition for a writ of habeas corpus filed pursuant to 28 U.S.C. Sec. 2254. Petitioner is an inmate at the Dodge Correctional Institution in Waupun, Wisconsin. He contends that his custody is in violation of the United States Constitution for two reasons: he was denied the right to present his chosen defense to the jury when the trial court refused to allow him to present lay and expert witnesses to testify about his mental state at the time of the shootings at issue in this case, and he was denied a full and fair chance to present his case during the trial's criminal responsibility phase because the trial court's examination of the court's expert witnesses "cloaked" them with the judge's seal of approval.
 
 
 20
 After reviewing the entire record, I conclude that the writ must be denied. I cannot say the state trial court conducted a fundamentally unfair trial. Further, the record does not reflect a trial so infected with constitutional errors as to make the verdict unreliable. Finally, the record does not provide any reason to reject the Wisconsin Court of Appeals' ruling on the amount of evidence necessary to raise the heat of passion defense under Wisconsin law.
 
 
 21
 In habeas corpus actions, state court findings of fact are presumed correct unless they are not "fairly supported" by the record, reviewed as a whole by the federal court. 28 U.S.C. Sec. 2254(d)(8); United States ex rel. Savory v. Lane, 832 F.2d 1011, 1019 (7th Cir.1987). Petitioner does not object to the accuracy or completeness of the findings made by the state court of appeals, State v. Lowe, No. 89-0209-CR (Wis.Ct.App. July 25, 1989), which are paraphrased below. Following that summary, I have set out additional facts found from the record.
 
 FACTS FOUND BY THE STATE COURT
 
 22
 Petitioner was approximately 60 years old at the time of the shootings. He was Washburn City Clerk, an elected position he held for 34 years until his arrest for the offenses at issue in this case.
 
 
 23
 Petitioner married his second wife, Elizabeth Peterson, in 1967. They had two children before the marriage ended in divorce in 1979 as a result of "incompatibility" caused by Peterson's drinking habits and petitioner's suspicions of her promiscuity. Despite this incompatibility, in 1983 petitioner and Peterson moved in together and agreed to share living expenses and the responsibility for raising their young son. Eventually the relationship soured as a result of disagreements over raising their son, Peterson's failure to pay half of the household expenses as agreed, and petitioner's discovery of Peterson's involvement with other men. Petitioner asked Peterson to move out in January 1987; she did so in May 1987. Between January and May 1987, petitioner was made aware of Peterson's romantic involvement with other men, including John McNamara.
 
 
 24
 Petitioner and Peterson maintained contact even after she moved out, mostly with respect to matters involving their son. Three days before the shootings, petitioner confronted Peterson about allowing their son to accompany her to bars and stay out late. Petitioner became increasingly despondent, had difficulty concentrating on his work, was subject to crying spells, and had trouble sleeping.
 
 
 25
 On June 13, 1987, the day before the shooting, petitioner drove to Ames, Iowa with a friend. They returned the next morning at 2:00 a.m. Petitioner arose about 8:30 a.m., and after doing some household chores, stopped at his friend's cabin to visit. After discovering that his friend was not awake, petitioner went to the woods near his own cabin to shoot at targets with a .45 caliber revolver. He later returned to his friend's cabin and conversed with him for awhile before he started his drive home. He stopped at a tavern in Cornucopia and had a beer, then drove along the shores of several lakes to watch picnicking families. He stopped several times to talk to individuals, for no apparent reason other than to make contact.
 
 
 26
 As he neared home, petitioner realized he had not eaten all day. He stopped at the Super Bowl tavern to buy a sandwich. After climbing the steps to the tavern he saw Peterson's and McNamara's cars parked outside. Although he does not remember carrying his revolver into the tavern, witnesses testified he walked into the tavern and shot Peterson and McNamara in their heads from behind as they sat at the bar. McNamara died as a result of the gunshot wound, but Peterson survived.
 
 ADDITIONAL FACTS
 
 27
 Petitioner was charged with one count of first degree murder and one count of attempted first degree murder. Petitioner entered pleas to both counts of not guilty and not guilty by reason of mental disease or defect. Petitioner called two psychiatrists to testify during the guilt phase of the trial, Drs. Gale and Greist. The trial judge did not allow either to give his opinion on petitioner's mental history or his mental state at the time of the shootings. Petitioner made an offer of proof stating that Drs. Gale and Greist would have testified that, at the time of the shootings, petitioner was suffering from a mental disease or diseases that caused his inability to appreciate the wrongfulness of his conduct and to conform his conduct to the law. Also, Dr. Gale would have testified that "intoxication is one type of organic brain syndrome and that [petitioner] suffered from another, more chronic type of organic brain syndrome." Petitioner testified about his background, his relationship with Peterson, and the events and his frame of mind in the days and weeks prior to the shootings.
 
 
 28
 The trial judge refused to allow petitioner to introduce lay opinion testimony as to his mental state preceding the shootings, reasoning that the jury could draw their own conclusions based on the witnesses' observations. At the conclusion of the trial, the trial judge instructed the jury on the elements of first degree murder and attempted first degree murder, as well as the lesser-included offenses of heat of passion and attempted heat of passion manslaughter. The jury found petitioner guilty of first degree murder and attempted first degree murder.
 
 
 29
 The trial judge called two court-appointed psychiatrists to testify in the second phase of the trial. The judge questioned each of the appointed doctors at length about their professional qualifications, and also elicited their opinions as to petitioner's state of mind at the time of the shootings, before allowing the defendant and the state to cross examine them. In the charge to the jury, the trial judge emphasized that no greater weight should attach to the court-appointed experts' testimony than to that of any other witness. Petitioner called Drs. Gale and Greist, and another witness for rebuttal purposes only, and the state called one expert.[1] Petitioner's rebuttal expert, Dr. Pollard, was prepared to give his opinion on the likely effect of "environmental and personal stresses" on petitioner because of his abnormal brain condition. Petitioner also sought to have a scan of a normal brain introduced as an exhibit, after Dr. Pollard testified that petitioner's brain ventricles were twice as large as normal. The trial judge excluded the proffered testimony as irrelevant and the normal brain scan as cumulative.
 
 
 30
 The jury found petitioner criminally responsible. The trial judge sentenced him to consecutive terms of life for the first degree murder conviction, and eight years for the attempted first degree murder conviction.
 
 
 31
 Petitioner appealed to the Wisconsin Court of Appeals on four separate grounds, alleging that 1) the trial court denied him a full and fair chance to present his defense during the guilt phase of his bifurcated trial; 2) the trial court improperly admitted irrelevant, non-probative, prejudicial evidence; 3) the trial court mishandled the trial so petitioner's heat of passion defense was not seriously considered in the second phase of the trial; and 4) the trial court denied petitioner a full and fair chance to present his case during the responsibility phase of the trial. Petitioner also asked for a new trial "in the interest of justice." The Wisconsin Court of Appeals affirmed petitioner's conviction in an unpublished decision, and the Supreme Court of Wisconsin refused to grant review.
 
 OPINION
 Exhaustion
 
 32
 In this court, petitioner has pursued only the second and fourth of these issues he raised in the state court. Specifically, petitioner alleges that during the guilt phase the trial court excluded relevant and competent lay and expert opinion testimony, and excluded relevant and competent expert testimony, and during the responsibility phase improperly influenced the jury by calling and examining expert witnesses.
 
 
 33
 In any habeas corpus proceeding challenging the constitutionality of a state court conviction, the federal court's initial task is to determine whether the claims were fairly presented to the state courts, Anderson v. Harless, 459 U.S. 4, 6 (1982); United States ex rel. Sullivan v. Fairman, 731 F.2d 450, 453 (7th Cir.1984), and whether the claims raised in the federal petition were presented to the state courts as federal constitutional issues. Nutall v. Greer, 764 F.2d 462, 465 (7th Cir.1985).
 
 
 34
 Although petitioner did not characterize his state court appeal as raising federal constitutional issues, he cited federal constitutional law and relied on familiar due process language. For example, in challenging the trial court's cumulative evidentiary rulings, petitioner argued that "due process [requires] that the accused be given a full and fair opportunity to present his chosen defense to the jury" and cited Chambers v. Mississippi, 410 U.S. 284 (1973) (federal due process was denied as a result of a state court's cumulative evidentiary rulings excluding evidence and precluding cross examination, which acted to prevent defendant from adequately presenting a defense). Petitioner argued also that the trial court's examination of its own expert witnesses resulted in a denial of his due process rights. In his appeal, petitioner argued that "the practice [of the court calling and examining its own witnesses], as done in this case, went too far and denied [me] a fair trial." Defendant's Brief at 42. Further, petitioner contended he "was denied a fair trial when the court became the prosecutor in phase II." Id. at 49. The court of appeals considered each of the issue petitioner raised.
 
 
 35
 I conclude that the state court was fairly alerted to the constitutional issue and that petitioner fully presented the issue. Cf. United States ex rel. Sullivan v. Fairman, 731 F.2d at 453-454 (state court not alerted to petitioner's federal constitutional claims when petitioner never spoke of due process and claim raised was substantively different from due process claim raised in federal court).
 
 
 36
 Because the issues were fully and fairly presented to the Wisconsin Court of Appeals, and fully addressed by that court, and because the state supreme court was given an opportunity to review the issues, the exhaustion requirement has been met. I turn them to the merits of the petition.
 
 Evidentiary Rulings
 
 37
 The first question is whether petitioner was denied his Sixth Amendment right to present a full defense by the trial court's evidentiary rulings excluding testimony of lay witnesses and of petitioner's psychiatrist at both the guilt and responsibility phases of the trial.
 
 
 38
 Federal courts may grant petitions for writs of habeas corpus only after finding that the petitioner's federal statutory or constitutional rights have been violated. United States ex rel. Lee v. Flannigan, 884 F.2d 945, 952 (7th Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 3277 (1990). Petitions challenging state court evidentiary rulings seldom succeed because the admissibility of evidence is generally a matter of state law. Dudley v. Duckworth, 854 F.2d 967, 970 (7th Cir.1988); United States ex rel. DiGiacomo v. Franzen, 680 F.2d 515, 517 (7th Cir.1982); United States ex rel. Clark v. Fike, 538 F.2d 750, 757 (7th Cir.1976), cert. denied, 429 U.S. 1064 (1977). A federal constitutional issue arises only if the state's evidentiary rulings deny a defendant a fundamentally fair trial. United States ex rel. Lee v. Flannigan, 884 F.2d 945; Dudley v. Duckworth, 854 F.2d 967; United States ex rel. Palmer v. DeRobertis, 738 F.2d 168, 170 (7th Cir.), cert. denied, 469 U.S. 924 (1984); Cramer v. Fahner, 683 F.2d 1376, 1385 (7th Cir.), cert. denied, 459 U.S. 1016 (1982); United States ex rel. DiGiacomo v. Franzen, 680 F.2d 515; United States ex rel. Clark v. Fike, 538 F.2d 750.
 
 
 39
 The proper standard of review for federal courts reviewing state court determinations of state law is whether the rulings "so infected the entire trial that the resulting conviction violates due process." Cupp v. Naughten, 414 U.S. 141, 147 (1973). See also Brecht v. Abrahamson, --- F.2d ----, No. 91-1835 (7th Cir. Sept. 26, 1991) ("[e]rrors in admitting or excluding evidence do not violate the Constitution unless the trial as a whole is so infected that the verdict is no longer reliable." Id. slip op. at 6-7).
 
 
 40
 To determine whether the trial was infected to the point of denying due process, the exculpatory significance of relevant and competent evidence must be evaluated and balanced against the competing state interest in the procedural and evidentiary rules that precluded the evidence at trial. Cunningham v. Peters, 941 F.2d 535, 538 (7th Cir.1991); McMorris v. Israel, 643 F.2d 458, 461 (7th Cir.1981), cert. denied, 455 U.S. 967 (1982). At issue here is the conflict between a defendant's rights under the Sixth and Fourteenth Amendments to present evidence in his own defense and the state's interest in regulating the presentation of evidence in its courts. Id.; Johnson v. Chrans, 844 F.2d 482, 484 (7th Cir.), cert. denied, 488 U.S. 835 (1988).
 
 
 41
 Petitioner argues that the exclusion of some lay witness testimony and defense psychiatric testimony precluded his heat of passion defense at the guilt phase and therefore denied him his Sixth Amendment right to present a defense. Petitioner contends also that exclusion of some testimony of defendant's psychiatrist at the responsibility phase of the trial denied him his Sixth Amendment right to present a defense.
 
 
 42
 The Wisconsin Court of Appeals found as a matter of state law that "Lowe did not appropriately raise a heat of passion issue ..." so that he was not harmed by the trial court's evidentiary rulings excluding heat of passion defenses. The court examined the evidence petitioner sought to introduce under a two part objective-subjective test, and concluded the objective prong of the test was not met: the events surrounding the murder would not have caused an ordinary person to react in the same way petitioner reacted. Based on that determination, and without reaching the subjective prong, the court held that petitioner did not sufficiently raise the heat of passion defense. State v. Lowe, No. 89-0209-CR at 11-12. Therefore, it held exclusion of evidence relating to that defense was harmless error.
 
 
 43
 The state court of appeals found also that petitioner was not denied a full and fair chance to present his defense in the responsibility phase of the trial: the trial judge was within his discretion to exclude petitioner's proffered evidence because it was cumulative.
 
 
 44
 The Court of Appeals for the Seventh Circuit has noted that "respect for a state court's findings of fact and application of its own law counsels against" de novo review by federal courts. Brecht v. Abrahamson, No. 91-1835 at 8. Review of state court actions must be deferential. See also Bates v. McCaughtry, 934 F.2d 99, 102 (7th Cir.), cert. denied, --- U.S. ----, 1991 WL 178986 (Oct. 15, 1991):
 
 
 45
 When a state court enters or affirms a conviction, it is saying that the evidence satisfies the legal norms. These norms are for the state to select. State law means what state courts say it means.... 'A federal court may not issue the writ on the basis of a perceived error of state law.'
 
 
 46
 (Citations omitted).
 
 
 47
 Court's Exclusion of Expert Witness Testimony at Guilt Phase of Trial
 
 
 48
 From petitioner's offer of proof at trial, it is evident that the opinions the two psychiatrists would have offered at the guilt phase would have been both irrelevant and incompetent. Drs. Greist and Gale would have testified that a combination of circumstances caused petitioner not to have the capacity to form intent. This kind of opinion testimony is disallowed expressly during the guilt phase of a trial under Wisconsin law. In Steele v. State, 97 Wis.2d 72, 99, 294 N.W.2d 2, 14 (1980), the state supreme court held that psychiatric or other testimony on the defendant's capacity to form an intent inadmissible during the guilt phase of a bifurcated trial. This holding was refined in State v. Flattum, 122 Wis.2d 282, 302, 361 N.W.2d 705, 716 (1985), in which the court held that only psychiatric testimony based "on the defendant's mental health history" is barred with respect to capacity to form intent. The Court of Appeals for the Seventh Circuit has held that it is neither arbitrary nor unreasonable for Wisconsin to recognize psychiatric testimony as relevant and competent on the issue of insanity, and irrelevant and incompetent on the capacity to form intent. Haas v. Abrahamson, 910 F.2d 384 (7th Cir.1990). I see no basis on which to disagree with the state court's evaluation of the trial judge's exclusion of psychiatric testimony as to petitioner's capacity to form an intent to kill in the guilt phase.
 
 
 49
 It was proper for the trial judge to exclude the doctors' proposed testimony that the stresses petitioner experienced would have caused an ordinary person in the same circumstances to do the same thing. The trial judge reasoned that psychiatrists have no more ability than jurors to determine what an ordinary person would do under the circumstances described. Indeed, in this case the psychiatrists had less competence than the jurors. The psychiatrists based their opinions on an interview with petitioner and a review of his records, while the jury heard a substantial amount of testimony in addition to petitioner's. It was well within the trial judge's discretion to conclude that the proffered expert testimony would invade the province of the jury.
 
 
 50
 It was proper also for the judge to exclude Dr. Gale's opinion that petitioner's abnormal brain condition was analogous to intoxication. An abnormal brain condition may be relevant to the issue of responsibility, but it is not relevant in the guilt phase of a bifurcated trial.
 
 
 51
 Petitioner contends that his expert witnesses ought to have been allowed to testify as to his personal and mental health history. His point would be valid had there been no other testimony on this issue. It is permissible for psychiatrists to testify during the guilt phase about "clinical facts regarding the defendant's mental health history," State v. Repp, 122 Wis.2d 246, 256, 362 N.W.2d 415, 419 (1985), but such testimony is limited by the rules of evidence that permit a judge to exclude cumulative testimony. In this case, the psychiatric experts were relying almost exclusively on information gathered from interviews with petitioner. They could add little to what petitioner himself knew and testified about. Their testimony on this issue was cumulative and properly excluded.
 
 
 52
 A review of the entire record does not reveal that the evidentiary rulings by the state trial judge were erroneous.
 
 
 53
 Court's Exclusion of Expert Testimony From Responsibility Phase of the Trial
 
 
 54
 Petitioner complains that his expert rebuttal witness was precluded from giving certain opinion testimony to the jury, thus denying him a fair trial.
 
 
 55
 Dr. Pollard was precluded from giving a conclusion about the effect on petitioner of environmental and personal stresses, combined with petitioner's abnormal brain condition. The trial judge concluded that the proffered testimony would go beyond the scope of Dr. Schutta's testimony, and further that it was not relevant to "whether or not [petitioner] had a mental disease or defect." Petitioner also sought to introduce a normal brain scan, which the trial judge excluded as cumulative after Dr. Pollard had testified that petitioner's brain ventricles were twice as large as in a normal brain.
 
 
 56
 A review of the entire record does not reveal that the evidentiary exclusions during the responsibility phase by the state trial judge were erroneous.
 
 Court's Examination of Expert Witnesses
 
 57
 Petitioner's last contention is that the trial judge improperly influenced the jury by examining two court-appointed expert witnesses. Petitioner does not contend that allowing the trial judge to call neutral experts is unconstitutional in and of itself; he argues that the practice as applied in his case denied him a fair trial.
 
 
 58
 Wisconsin law allows a trial court to call neutral expert witnesses in addition to witnesses called by the parties. Wis.Stat. Sec. 971.16. The trial judge called and examined two expert witnesses, and elicited their opinions as to petitioner's state of mind at the time of the shootings. The court of appeals found no statutory violation in the judge's actions.
 
 
 59
 Federal courts can review state laws only on constitutional grounds. Petitioner has stated explicitly that he does not challenge the constitutionality of the law. He provided no facts to support his claim that the law was applied unconstitutionally to him, such as showing it was applied differently to him than to other litigants. Therefore, there is no basis for disagreeing with the court of appeals' ruling that, as applied to petitioner, Wis.Stat. Sec. 917.16 did not deprive him of due process.
 
 
 60
 Based on my review of the entire record, I cannot say that the state trial court conducted a fundamentally unfair trial. The record does not reflect a trial so infected with constitutional errors as to make the verdict unreliable. Further, the record does not provide any reason to overturn the ruling of the Wisconsin Court of Appeals on what constitutes sufficient evidence to raise the heat of passion defense under Wisconsin law.
 
 ORDER
 
 61
 IT IS ORDERED that petitioner's petition for a writ of habeas corpus is DENIED.
 
 
 62
 Entered this 5th day of December, 1991.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that either of the parties could file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). The petitioner has filed a statement requesting oral argument. Upon consideration of that statement, the briefs, and the record, the request for oral argument is denied, and the appeal is submitted on the briefs and the record
 
 
 [1]
 Effective January 1, 1989, the Wisconsin Statutes were revised to replace the crime of manslaughter with second degree intentional homicide, see Sec. 940.05, and the "heat of passion" defense with the defense of "adequate provocation." See Secs. 939.44; 940.01(2)
 
 
 [1]
 Dr. Kurt Schellhaus was originally on petitioner's witness list. He examined petitioner and prepared a report setting out his findings, but he refused to travel from Minnesota to testify at trial. Two weeks before trial, petitioner filed a motion requesting a videotape deposition of Schellhaus. The motion was denied. Six days prior to trial, the state added Dr. Schutta to its witness list, in response to Dr. Schellhaus's report. On the first day of trial, petitioner requested that Dr. Pollard be allowed to testify in place of Dr. Schellhaus. The trial judge refused because petitioner had not complied with the 3 day notice requirement of Wis.Stat. Sec. 971.16. However, the judge did allow Dr. Pollard to testify in rebuttal to Dr. Schutta's testimony in the responsibility phase of the trial