**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 06a0740n.06**
**Filed: October 5, 2006**

**No. 05-1748**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | EASTERN DISTRICT OF MICHIGAN |
| ALCUS FOREMAN, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Before: NORRIS, COLE, and COOK, Circuit Judges.

COOK, Circuit Judge. Alcus Foreman was convicted of one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g), and sentenced to fifty-seven months in prison. He appeals both his conviction and his sentence. We affirm both.

I

One morning, Keisha Wynn, Foreman's ex-girlfriend, was riding in a car driven by her friend, Titus Elmore. They noticed a tan van following their vehicle, and Elmore turned to elude it. According to Wynn, as they turned, the driver of the van shot at them several times but missed. Elmore sped up to escape, soon encountering a sheriff's vehicle and stopping to report the shooting.

Elmore explained to the deputy sheriff what happened. During the explanation the tan van approached, then quickly veered off, prompting the deputy to give chase. Defendant Foreman, who was driving the van, attempted to outrun the deputy (evading visual contact at points) but with the aid of a backup unit, was eventually stopped.

A search of the van failed to yield the gun or any casings. When Elmore directed another deputy to the area where Foreman fired the shots, however, two spent casings were found. Retracing the route of the chase produced the discarded handgun, without prints, registration, or ownership records connecting it to Foreman.

Michigan authorities arrested and charged Foreman with: (1) being a felon in possession of a firearm, (2) carrying a concealed weapon, (3) assaulting Elmore, (4) assaulting Wynn, and (5) using a firearm to commit a felony. Ultimately the state dismissed its charges in favor of Foreman being charged in federal court with one count of § 922(g).

II

At trial, Wynn and a number of deputies testified to the facts described above. (Elmore failed to testify, and Foreman chose not to testify.) On direct, Wynn said that she saw Foreman "shooting out his driver's side window." On cross-examination, Foreman's attorney, William Daniel, confronted Wynn with the fact that her initial report to the police two hours after the incident failed to include any statement that she "ever saw Mr. Foreman with a gun in his hand." Wynn attributed

this to her emotional state at the time. Attacking Wynn's credibility during closing argument, Foreman's attorney suggested that Wynn still being "shook up" two hours after an incident where no one was hurt could not explain the inconsistency between Wynn's initial report and her trial testimony. Daniel also mentioned the dropped state charges, admonishing the jury to only focus on the crime actually charged.

In his reply, Assistant United States Attorney Haugabook responded to these two defense points as follows:

> He wants to say about Ms. Keisha Wynn in those two hours and twenty-three minutes. Well, she told you that she was still under the stress of that situation. Use your reason and common sense. She left a man because of domestic violence, and now here's another man taking some violence against her. How else is she supposed to be feeling under those circumstances? And she told you how she was still crying. He wants to make it seem like those are nothing more than a mosquito bite. But you think about the consequences of that because the mother thinks -- here's a mother who's almost murdered only because he's a bad shot. He wants to say, oh, well, there's no evidence that the car was struck. There is no evidence that this gentleman was a marksman.
>
> He wants to talk about the state charges and what have you. Bear in mind had he been a better shot, an accurate shot, there might have been a big difference in the charging situation.

Daniel immediately objected to this argument as "improper," and Judge Friedman sustained the objection within the hearing of the jury. Haugabook defended his comments as being a "fair response," but Judge Friedman told him to "move on." Daniel did not then seek a curative instruction. Rather, after Judge Friedman charged the jury and excused it to begin deliberations,

Daniel moved for a mistrial based on Haugabook's statement. Judge Friedman ruled that the statement did not rise to the level of prosecutorial misconduct, holding that (1) "the issue of what happened in the state and other charges" had been raised and (2) "the issue of the charge and the duty of the jury to only consider that the charge which the defendant is charged with here, I think is made very, very clear in the jury instructions." The court denied the motion for a mistrial on that basis, and the jury convicted Foreman on the sole count of § 922(g). Foreman grounds his appeal of his conviction solely on the government's closing argument.

We review de novo claims of prosecutorial misconduct using a two-step analysis. *United States v. Tarwater*, 308 F.3d 494, 510-11 (6th Cir. 2002); *United States v. Barnett*, 398 F.3d 516, 522 (6th Cir. 2005). We first determine whether the prosecutor's statement was improper, and we then determine whether his conduct was flagrant. *Tarwater*, 308 F.3d at 511 (citing *United States v. Krebs*, 788 F.2d 1166, 1177 (6th Cir.1986)).

Foreman asserts impropriety in Haugabook's comments about the possibility of a murder charge. To assess the impropriety of a remark, we "view the conduct at issue within the context of the trial as a whole." *United States v. Beverly*, 369 F.3d 516, 543 (6th Cir. 2004) (citing *United States v. Young*, 470 U.S. 1, 12 (1985)). "[I]t is also appropriate to consider whether, and to what extent, a prosecutor's improper argument is invited by defense counsel's statements." *United States v. Jacobs*, 244 F.3d 503, 508 (6th Cir. 2001); *see also Barnett*, 398 F.3d at 523 (citing *Jacobs*).

Foreman cites a Seventh Circuit case for the proposition that "the prosecutor's engaging in a discussion of uncharged crimes [is] wholly inappropriate." *United States v. Penass*, 997 F.2d 1227, 1230 (7th Cir. 1993). *Penass* involved a defendant charged with and tried for assault with a dangerous weapon. *Id.* at 1229. During closing argument, the prosecutor noted, "We're not here for attempted murder, but it's something maybe someone would think about." *Id.* at 1230. For the Seventh Circuit, the concern was that "[h]aving been made aware that the government could have brought a more serious charge, the jury might even believe that it was somehow obligated . . . to convict Wendall of the crime charged." *Id.* Here, however, the government counters, a prosecutor may respond to "invited" remarks to "right the scale." *Young*, 470 U.S. at 12-13.

Haugabook's statement that "here's a mother who's almost murdered," seems a reasonable response to the invitation by Foreman's counsel. Daniel argued in his closing argument that it was unreasonable to believe that Wynn remained sufficiently distraught two hours after the incident to omit crucial information from her statement. Arguing the severity of the trauma—she had almost been murdered—reasonably responded to Daniel's argument and thus is not improper.

On the other hand, Haugabook's statement that "had he been a better shot, an accurate shot, there might have been a big difference in the charging situation" falls closer to the line set by *Penass*. Charged only with being a felon in possession of a firearm and not attempted murder, Foreman plausibly argues (consistent with the holding of our sister circuit in *Penass*) that focusing Foreman's jury on the fact that he might have been charged with murder could pressure a jury to convict him

of the much lesser felon-in-possession offense.  Indeed, the Government does not appear to argue that the statement would be proper on its own; rather, it argues that the statement fairly responded to Daniel's closing argument.  We view Haugabook's remark as satisfying the impropriety prong of *Tarwater*, but Foreman concedes, and we agree, that it fails the flagrancy prong.

For non-flagrant improper conduct, we apply the three-part *Bess* test to determine whether Haugabook's misconduct warrants reversal.  *United States v. Bess*, 593 F.2d 749, 753-57 (6th Cir. 1979).  Under the *Bess* test, we reverse a conviction for prosecutorial misconduct only if "(1) proof of defendant's guilt is not overwhelming, and (2) defense counsel objected, and (3) the trial court failed to cure the error with an admonishment to the jury."  *United States v. Carroll*, 26 F.3d 1380, 1385-86 (6th Cir. 1994).

The evidence against Foreman was not overwhelming because it was not "far higher than mere sufficiency to uphold conviction."  *United States v. Lane*, 474 U.S. 438, 450 n.13 (1986).  No physical evidence (residue or fingerprints) linked him to the gun or the casings, and no registration records showed he owned it.  The only person to see Foreman with the gun was Wynn, and her testimony was somewhat inconsistent.  The deputy sheriff chasing Foreman never saw him throw the gun from the van, though he lost sight of him for only fifteen seconds.  Thus, because the evidence against Foreman was not overwhelming, we find the first element of *Bess* satisfied.

The second element of *Bess* requires the defense attorney to have objected at trial and the parties agree that Daniel did.

The third element of the *Bess* test requires reversal if "the trial court failed to cure the error with an admonishment to the jury." *Carroll*, 26 F.3d at 1385-86. "Both the timing and the firmness of the trial court's admonition are relevant in evaluating whether an admonition has been sufficient to mitigate prejudicial error." *United States v. Solivan*, 937 F.2d 1146, 1157 (6th Cir. 1991); *see also United States v. Galloway*, 316 F.3d 624, 633 (6th Cir. 2003) ("We have held that for a curative admonishment to be sufficient, it must be swift and in proportion to the potential harm."). In *Bess*, we reversed a conviction because the prosecutor's statements "were promptly objected to and the trial judge failed to give immediate curative admonishment." 593 F.2d at 757. In *Galloway*, the defendant "objected immediately after the prosecutor's statement and the judge sustained the objection, stating: 'Sustained. No evidence. Move on.'" 316 F.3d at 633. We found "his admonition was sufficiently firm to ameliorate the non-flagrant conduct" and held that it "satisfie[d] the curative instruction requirement under *Bess*." *Id.*

The incident in Foreman's trial was nearly identical to the one in *Galloway*. Immediately after Haugabook improperly commented on the "big difference in the charging situation," the following exchange took place within the hearing of the jury:

Mr. Daniel: Your Honor, that is entirely improper argument to subject like that.
The Court: Sustained.
Mr. Haugabook: It's fair response.
The Court: Let's move on. I'll sustain the objection, and let's move on.
Mr. Haugabook: [continues with his rebuttal argument]

Judge Friedman's admonition to the jury mirrored the one the district judge gave in *Galloway*. This should have made clear to a reasonable jury that Haugabook was arguing something improper and should "move on" to another line of argument. Additionally, while "the prosecutor's misconduct was great" in *Bess*, 593 F.2d at 757, Haugabook's was not. We find both the misconduct and the cure in Foreman's trial far closer to *Galloway* than *Bess*, and we hold that the defendant has not satisfied the third element of the *Bess* test. Haugabook's comment does not warrant reversal under *Bess*, and we thus affirm Foreman's conviction.

III

Foreman also appeals his sentence, claiming that the district court erred by adding a four-level § 2K2.1(b)(5) enhancement without properly finding he committed the conduct underlying that enhancement.

The Presentence Report (PSR) recommended a base-offense level of twenty and a four-level § 2K2.1(b)(5) enhancement for using and possessing a firearm or ammunition in connection with another felony offense (Felonious Assault), for a total offense level of twenty-four. When paired with Foreman's Criminal History Category II, the guideline range calculated to fifty-seven to seventy-one months. Foreman objected to the four-level enhancement on the sole ground that it violated *Blakely v. Washington*, 542 U.S. 296 (2004), inasmuch as he had not been charged with felonious assault.

At sentencing, which occurred soon after the Supreme Court's decision in *Booker v. United States*, 543 U.S. 220 (2005), Daniel noted that his client had never been charged with felonious assault and suggested that as a result of the *Booker* decision, the court could exercise its broad discretion in determining what conduct should factor into its sentence. Judge Friedman held § 2K2.1(b)(5) to be applicable and the resulting guideline range appropriate in Foreman's case. He sentenced Foreman to the minimum of the range.

After the Supreme Court invalidated the section of the Sentencing Reform Act (SRA) that provided the standard for appellate review, *Booker*, 543 U.S. at 260 (excising 18 U.S.C. § 3742(e)), it instructed appellate courts to review sentences for reasonableness. *Id.* at 261. This court distinguishes between procedural and substantive unreasonableness. *See, e.g.*, *United States v. Davis*, 458 F.3d 491, 495 (6th Cir. 2006). We invalidate a sentence as procedurally unreasonable when the sentencing court did not calculate the guideline range correctly, as Foreman complains. *Id.*

At the outset, we dispense with the government's claim that Foreman waived any objection to the enhancement through a concession by counsel at sentencing. The government fails to convince us that counsel's statement, coming a few months after *Booker* and taken in the context of the entire argument, amounts to a knowing relinquishment of Foreman's rights. *See United States v. Aparco-Centeno*, 280 F.3d 1084, 1088 (6th Cir. 2002) (citing *United States v. Olano*, 507 U.S.

725, 732-33 (1993)). Moreover, Foreman himself specifically objected to the Presentence Report's recommendation setting the offense level at twenty-four, rather than twenty.

Because Foreman objected to the § 2K2.1(b)(5) sentencing enhancement in the district court, we review de novo his miscalculation claim. *United States v. Till*, 434 F.3d 880, 885-86 (6th Cir. 2006). Under the SRA, the Government must prove, "by a preponderance of the evidence, that a particular sentencing enhancement applies." *United States v. Dupree*, 323 F.3d 480, 491 (6th Cir. 2003). Although the Supreme Court excised the sections of the SRA making the Guidelines mandatory, it left intact the rest of the Act to function independently. *Booker*, 543 U.S. at 259. Because a district judge must correctly calculate the guideline range for a sentence to be procedurally reasonable, the Government's duty to prove the facts underlying the enhancement survives *Booker*. *See, e.g.*, *United States v. Bernal-Aveja*, 414 F.3d 625, 627 (6th Cir. 2005) (holding this burden still applies); *United States v. Yagar*, 404 F.3d 967, 972 (6th Cir. 2005) (same).

Sentencing Guideline § 2K2.1(b)(5) provides, in relevant part, "If the defendant used or possessed any firearm or ammunition in connection with another felony offense . . . increase by 4 levels." The PSR's "Offense Conduct" section reported that Foreman fired several shots at Wynn and Elmore's vehicle. The PSR recommended the § 2K2.1(b)(5) increase for felonious assault. At the sentencing hearing, Judge Friedman concluded "that the report as written was applicable," and "that 2K2.1(b)(5) is applicable as to the four points." He did not explicitly find any facts that would support applying the enhancement.

Fed. R. Crim. P. 32(i)(3) requires any party who disagrees with facts in the PSR to object to that fact specifically. We have repeatedly made clear that Rule 32(i)(3) survives *Booker*. *See, e.g.*, *United States v. DeCarlo*, 434 F.3d 447, 460 (6th Cir. 2006); *United States v. Adkins*, 429 F.3d 631, 632-33 (6th Cir. 2005). If a defendant admits a fact, the judge has nothing to find, pre- or post-*Booker*. Thus, if Foreman admitted the facts in the PSR by failing to object to them, the district court had no duty to make a finding of fact.

Foreman did not object to the *facts* in the PSR that he used the gun in connection with committing felonious assault. He objected to the offense level as follows:

> (5) Quote #18: Firearm was used in connection with another felony offense (Felonious Assault). Increased by 4 levels according to <u>Blakely v. Washington</u>. I was not charged with as a count by Grand Jury or Jury and I have only one count on my Indictment. There was no other charges that the jury had to convict me on according to prosecutor & Judge Bernard A. Friedman.

Foreman argued incorrectly that *Blakely* categorically prohibited the enhancement rather than disputing the facts concerning his weapon use. He contested factual inaccuracies in other parts of the PSR, including disputing where the gun was found. Because Foreman admitted, pursuant to Rule 32, the factual circumstances supporting the enhancement by failing to object to them, and because he raises no other objection to his sentence, we find no error in his sentence.

IV

For the foregoing reasons, we affirm both Foreman's conviction and his sentence.