In the
United States Court of Appeals
For the Seventh Circuit

No. 99-1686

Tommy L. Rutledge,

Petitioner-Appellant,

v.

United States of America,

Respondent-Appellee.

Appeal from the United States District Court
for the Central District of Illinois, Rock Island Division.
No. 97-4054--Michael M. Mihm, Judge.

Argued September 28, 2000--Decided October 24, 2000

Before Flaum, Chief Judge, and Bauer and Harlington
Wood, Jr., Circuit Judges.

Flaum, Chief Judge. Tommy Rutledge appeals the
denial of his federal habeas petition. He
challenges the reinstatement of a vacated
conviction and raises various claims related to
the inadequate performance of both his trial and
habeas counsels. For the reasons stated herein,
we affirm the district court.

I.  Background

Petitioner Rutledge was indicted in February,
1991 on six counts related to running a narcotics
enterprise. The charges were: conducting a
continuing criminal enterprise in violation of 21
U.S.C. sec. 848 ("CCE") ("Count I"); conspiring
to distribute cocaine in violation of 21 U.S.C.
sec. 846 ("Count II"); distribution of cocaine in
violation of 21 U.S.C. sec. 841(a)(1) ("Count
III"); possession of a firearm by a convicted
felon in violation of 18 U.S.C. sec. 922(g)
("Count IV"); and using or carrying a firearm
during the commission of a drug offense in
violation of 18 U.S.C. sec. 924(c) ("Count V" and
"Count VI"). Kim Mummert, a member of Rutledge's
enterprise and his girlfriend at the time,
cooperated with the government, and testified
that on hundreds of occasions she saw Rutledge
give cocaine to other members of the organization
with instructions as to whom to deliver the

cocaine and how much money to collect. The government sought to establish the distribution count through Michael Wright, who testified that he purchased cocaine from Rutledge on January 27, 1989. Following a jury trial, Rutledge was found guilty of all six counts on June 25, 1992. Rutledge received life imprisonment on the CCE count, life imprisonment without the possibility of parole for the conspiracy and distribution counts, and ten years imprisonment for the felon in possession of a firearm count, which were all to run concurrently. Rutledge received five years imprisonment for Count V and ten years imprisonment on Count VI, which were to run consecutively to each other and the other sentences. Rutledge's convictions and sentences were affirmed by this court on direct appeal. United States v. Rutledge, 40 F.3d 879 (7th Cir. 1994). Following precedent in this circuit, we held that Rutledge could be convicted of and sentenced for both CCE and conspiracy to distribute drugs, even though the latter is a lesser included offense of the former, so long as the sentences ran concurrently. Id. at 886.

The Supreme Court reversed, holding that because conspiring to distribute drugs is a lesser included offense of CCE either Count I or Count II must be vacated. Rutledge v. United States, 517 U.S. 292, 307 (1996). The Supreme Court remanded Rutledge's case to this court, and we remanded to the district court with directions to vacate either the CCE or conspiracy conviction. The district court vacated the conspiracy conviction and resentenced Rutledge on the remaining five convictions, giving him the same sentence for each conviction as it had after trial.

In the months leading up to the district court's decision on the 28 U.S.C. sec. 2255 motion which is the subject of this appeal, Rutledge and the government filed a number of motions and responses, of which only the ones relevant to this appeal are mentioned. On April 24, 1997, Rutledge, acting pro se, filed a motion pursuant to sec. 2255 to vacate his convictions and correct his sentence. Among his other claims, Rutledge asserted that he had received ineffective assistance of counsel regarding his distribution count because his trial counsel failed to interview Mummert and Wright and present an alibi defense.

On November 12, 1997, the district court appointed counsel for Rutledge in order to develop the arguments raised in his sec. 2255 motion. In a December 4 telephone conference, the district court requested that counsel address whether the court could reinstate Rutledge's

conspiracy conviction if it vacated his CCE conviction. Rutledge's appointed attorney filed a supplemental memorandum on March 26, 1998, which provided additional and detailed legal support for Rutledge's claims. On June 18, the district court held a conference concerning Rutledge's case. After discussion and debate with counsel, the court tentatively announced parts of its decision regarding Rutledge's claims. Among other conclusions, the court indicated that it would reject Rutledge's claim that his trial counsel had been ineffective with respect to the distribution charge.

On September 25, 1998, the court issued an order granting in part and denying in part Rutledge's sec. 2255 motion and resolved certain other outstanding motions. Rutledge v. United States, 22 F. Supp.2d 871 (C.D. Ill. 1998). The court vacated the CCE conviction as well as Counts V and VI, and reduced the sentence for Count III (distribution) from life without parole to thirty years. The court reinstated Count II, the conspiracy conviction, rejecting Rutledge's claims that he would be prejudiced by this reinstatement because he received a harsher sentence on Count II than Count I and that the court lacked statutory jurisdiction to reinstate a vacated sentence. The court also finalized its rejection of Rutledge's arguments that his trial counsel had been ineffective regarding the distribution count. The court entered judgment on October 16, 1998.

On October 2, 1998, the district court docketed a September 20, 1998 letter from Rutledge to his sec. 2255 counsel, a copy of which Rutledge had sent to the court. This letter detailed ways in which Rutledge believed his sec. 2255 counsel had performed inadequately. Rutledge's letter claimed that both his sec. 2255 and trial counsels failed to interview witnesses including Wright, Mummert, and Brandy Bolen. Attached to the letter were various declarations from these witnesses or persons who had talked to these witnesses. One attachment was a transcript of an interview between Bolen and a private investigator hired by Rutledge, in which Bolen said that on January 27, 1989, Rutledge had left the area where the distribution was supposed to have occurred before Wright arrived.

On October 5, 1998, Rutledge's counsel filed a timely motion to alter or amend the judgment. Rutledge filed pro se motions to reconsider the district court's decision on October 6, October 15, November 12, and November 25. On November 20, the court docketed Rutledge's pro se motion to strike the motion to alter or amend the judgment filed by his attorney, to dismiss his appointed

counsel and proceed pro se, and to extend the time to file his notice of appeal from the court's ruling. The clerk of the court also received a notice of appeal from Rutledge on or shortly before November 23, but did not file this in the district court docket.

The district court held a telephone conference with Rutledge, his attorney, and the government on November 25. The district court asked Rutledge whether he wanted to file his notice of appeal, which would divest the court of jurisdiction, or proceed with a motion to alter or amend the judgment under Federal Rule of Civil Procedure 60(b). Rutledge asked the court if he could appeal after the consideration of his Rule 60(b) motion. The government told the court that it did not believe that Rule 60(b) motions tolled the time for filing a notice of appeal. The court stated that a miscarriage of justice would result if Rutledge were not permitted to file his Rule 60(b) motion and appeal after the ruling on such motion. Rutledge agreed to proceed with his Rule 60(b) motion and asked the court to withdraw his notice of appeal. The court then granted Rutledge's motion to proceed pro se. The court also ruled that all of the motions to reconsider had been withdrawn except for the one filed by Rutledge on November 25, the day of the conference. This November 25 motion included an affidavit from Bolen stating that she would have been willing to serve as an alibi witness on the distribution count but had not been interviewed by trial counsel.

The court denied Rutledge's motion to reconsider on January 26, 1999. Rutledge had claimed that his trial counsel was ineffective for not interviewing Bolen. The court found that this was the first mention of Bolen and that it was too late to raise this issue in a motion to reconsider. The court rejected Rutledge's challenge to the court's jurisdiction to reinstate the vacated conspiracy conviction, finding that Rutledge had not raised this argument in his sec. 2255 motion/1 and that sec. 2255 provided statutory authority for the court's action.

Rutledge filed a notice of appeal and an application for a certificate of appealability on March 15, 1999. On March 23, the district court issued to Rutledge a certificate of appealability for the issue of whether reinstating the conspiracy conviction was proper, but denied a certificate for Rutledge's various claims of ineffective assistance of trial counsel.

II.  Discussion

Rutledge presents five issues in this appeal of the denial of his sec. 2255 and Rule 60(b) motions./2 The first, and only one for which he was issued a certificate of appealability, is whether the district court had jurisdiction to reinstate the previously vacated conspiracy conviction.

The second issue is whether the district court should have conducted an evidentiary hearing regarding Rutledge's claim that his trial counsel was ineffective for failing to interview Mummert and Wright. The third question is did the district court err in not treating Rutledge's September 20, 1998 letter as a motion to amend his sec. 2255 petition. The fourth issue is whether the district court abused its discretion by denying the claims of ineffective assistance of counsel argued in Rutledge's Rule 60(b) motion. The district court did not grant a certificate of appealability for these three challenges. Rutledge's raising of these questions is considered an implicit request for a certificate of appealability from this court. See Slack v. McDaniel, ___ U.S. ___, 120 S. Ct. 1595, 1603 (2000); Williams v. Parke, 133 F.3d 971, 975 (7th Cir. 1997). We will issue such a certificate only if the petitioner makes a substantial showing of the denial of a constitutional right. 28 U.S.C. sec. 2253(c)(2). Rutledge must show either that reasonable jurists could debate whether the challenges in his habeas petition should been resolved differently or that his petition adequately shows a sufficient chance of the denial of a constitutional right that he deserves encouragement to proceed further. See Slack, 120 S. Ct. at 1603-04.

The fifth and final challenge, which Rutledge raises for the first time on appeal, is whether his sec. 2255 counsel was ineffective for failing to interview and bring to the attention of the court certain witnesses who supposedly would have further supported Rutledge's claim that his trial counsel was ineffective with respect to the distribution charge.

A. Statutory Jurisdiction for Reinstatement of a Vacated Conviction

Rutledge argues that no statute provides a district court with the power to reinstate a vacated conviction. Rutledge claims that the district court erred by rejecting this challenge in both his sec. 2255 and Rule 60(b) motions. We review de novo the district court's legal determination that it had jurisdiction to reinstate a vacated conviction. See United States v. Brisk, 171 F.3d 514, 519 (7th Cir. 1999).

While Rutledge raises an interesting challenge to the district court's action, we conclude that a district court does have statutory authority to reinstate a vacated conviction./3 We begin with the relevant language of sec. 2255:

If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

(emphasis added). Admittedly, nothing in this language directly and explicitly states that a vacated conviction can be reinstated, but such a statement is unnecessary. The terms "resentence" and "correct the sentence as may appear appropriate" are both grants of broad and flexible power to the district court./4 See United States v. Hillary, 106 F.3d 1170, 1171-72 (4th Cir. 1997). These terms encompass reinstating a vacated conviction as part of the process of correcting the sentence, if such an act would be proper. Reinstating Rutledge's conspiracy conviction would be appropriate here because that conviction does not suffer from any procedural or substantive defect, but was vacated only because it was an included offense of the CCE conviction. In these circumstances, sec. 2255's language granting the power to resentence or correct the sentence as may appear appropriate provides district courts with a jurisdictional basis to reinstate the vacated conviction for the included offense.

Our prior cases permitting district courts to increase sentences for particular convictions after a successful sec. 2255 motion support this holding, though these decisions are not exactly analogous since vacated convictions were not involved. The word "sentence" in sec. 2255 refers to the entire package of terms that the defendant receives for his convictions. See United States v. Walker, 118 F.3d 559, 561 (7th Cir. 1997); United States v. Smith, 103 F.3d 531, 534 (7th Cir. 1996). A defendant cannot have a legitimate expectation in the finality of his or her sentence when he or she uses a sec. 2255 motion to challenge his or her convictions. See Woodhouse v. United States, 109 F.3d 347, 348 (7th Cir. 1997). If a defendant successfully challenges some of his or her convictions on a sec. 2255 motion, the district court may adjust the remainder of the package by resentencing the

defendant on the remaining convictions, which includes increasing the sentences on those counts./5 See United States v. Binford, 108 F.3d 723, 728-29 (7th Cir. 1997); Smith, 103 F.3d at 534. At least in circumstances where a conviction was vacated only because it is an included offense of another conviction, this vacated conviction should be considered part of the sentencing package which the defendant has challenged, and so subject to reinstatement if the conviction in which it is included also is vacated.

The Supreme Court's opinion reversing our judgment in Rutledge's case is instructive on whether a district court can reimpose a vacated conviction. The government argued that both the CCE and conspiracy convictions should stand because this would prevent a defendant who successfully challenges one of these from escaping punishment. 517 U.S. at 305. In rejecting this argument, the Court explained that the lower courts had already developed methods to resolve such problems. Id. at 305-06. In particular, the Court favorably cited the opinion in United States v. Silvers, 888 F. Supp. 1289, 1306-09 (D. Md. 1995), aff'd in relevant part, 90 F.3d 95 (4th Cir. 1996), where the district court reinstated a previously vacated conspiracy conviction after vacating and granting a new trial on the defendant's CCE conviction. The Court's passage might be considered dictum, but it represents the Court's considered view on an issue related to its holding and should be followed unless it conflicts with a holding of the Court. See United States v. Bloom, 149 F.3d 649, 653 (7th Cir. 1998). Thus, the Supreme Court has validated the precise action of the district court in the instant case. Rutledge correctly points out that neither the Court's opinion in Rutledge nor the lower court opinion in Silvers discuss the statutory basis for such action by the district court. However, given the broad language of sec. 2255, we will not say that the district court lacked jurisdiction for an act explicitly approved by the Supreme Court.

Besides this language in the higher court's Rutledge opinion, our decision also has substantial support in precedents that have addressed the question of whether a district court can reinstate a vacated conviction. The majority of courts to consider this issue have found that districts courts do have such power. See Silvers, 90 F.3d at 101; United States v. Maddox, 944 F.2d 1223, 1233 (6th Cir. 1991); United States v. Niver, 689 F.2d 520, 531 (5th Cir. 1982); see also United States v. West, 201 F.3d 1312 (11th Cir. 2000) (vacating defendant's CCE conviction and remanding to district court

with instruction to reinstate previously vacated conspiracy conviction); United States v. Butera, 677 F.2d 1376, 1386 (11th Cir. 1982) (stating that a vacated conviction can be reinstated without specifying which court can do so); United States v. Hooper, 432 F.2d 604 n.8 (D.C. Cir. 1970) (same). Again, while these cases do not explicitly address the question of statutory jurisdiction, we are unwilling to conclude that all of these opinions are wrong given that the reinstatement of a previously vacated conviction fits within the language of sec. 2255. We have carefully and thoughtfully considered the statement that district courts cannot reinstate convictions made in United States v. Medina, 940 F.2d 1247, 1253 (9th Cir. 1991), but find it unpersuasive in light of the Supreme Court's opinion in Rutledge and our own analysis.

One last concern remains regarding the reinstatement of Rutledge's conspiracy conviction. Rutledge asks that we remand his case to the district court so that he may challenge his conspiracy conviction, which he had not done previously because the conviction had been vacated. A court should notify the defendant that it is contemplating reinstating a vacated conviction before it renders its decision in order to give the defendant the opportunity to challenge any reinstated convictions. However, in the facts of this case Rutledge was given just such an opportunity. The district court raised the question of reinstating Rutledge's conspiracy conviction in a December 4, 1997 telephone conference. From this point forward, Rutledge was on notice that the reinstatement of his Count II conviction was a distinct possibility. Rutledge had almost ten months between this conference and the lower court's decision, during which Rutledge's counsel filed a supplemental memorandum in support of the sec. 2255 petition, to challenge the propriety of his conspiracy conviction. Furthermore, after the court's decision actually reinstating the Count II conviction, Rutledge filed a Rule 60(b) motion, but again did not question the substance of this conviction. Thus, Rutledge has forfeited any objection to his reinstated conspiracy conviction.

B.  Ineffective Assistance of Trial Counsel

Rutledge argues that his trial counsel was ineffective because he did not interview Mummert and Wright before trial and so did not try to establish an alibi defense to the distribution count based on their statements. Rutledge further argues that he was prejudiced by trial counsel's supposed deficiencies because the government's evidence on the distribution charge was weak,

consisting of only Wright's testimony.

To succeed on an ineffective assistance of counsel claim, the defendant must first show that counsel's performance fell below an objective standard of reasonableness and secondly demonstrate that this deficient performance so prejudiced the defendant that he or she was deprived of a fair trial. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984); United States v. Trevino, 60 F.3d 333, 338 (7th Cir. 1995). Regarding the first prong, the defendant must base his or her claim on specific acts or omissions by his or her counsel. Strickland, 466 U.S. at 690; Trevino, 60 F.3d at 338. The court, beginning with a strong presumption in favor of adequate assistance, then determines whether these acts or omissions fall outside the wide range of professionally competent assistance. Strickland, 466 U.S. at 690; Trevino, 60 F.3d at 338. An attorney's performance is satisfactory only if he or she makes a reasonable investigation of the principal facts of the defendant's case or makes a reasonable decision that particular investigations are unnecessary, Strickland, 466 U.S. at 691, though an attorney need not investigate every evidentiary possibility before choosing a defense, see Sullivan v. Fairman, 819 F.2d 1382, 1392 (7th Cir. 1987). Whether a decision to forego more investigation is reasonable is analyzed from the perspective of counsel at the time of the decision and in light of all the circumstances. See Kimmelman v. Morrison, 477 U.S. 365, 384 (1986); Williams v. Washington, 59 F.3d 673, 680 (7th Cir. 1995). The failure to interview witnesses can constitute deficient performance in particular cases. See, e.g., Montgomery v. Petersen, 846 F.2d 407, 414 (7th Cir. 1988). To satisfy the second requirement of an ineffective assistance of counsel claim, the defendant must show that counsel's deficient performance rendered the jury's verdict unreliable or the proceeding fundamentally unfair, depriving the defendant of some procedural or substantive right. See Lockhart v. Fretwell, 506 U.S. 364, 372 (1993).

Rutledge's trial counsel made a reasonable decision not to interview Mummert./6 Mummert, a prosecution witness, had extensive personal knowledge of Rutledge's drug enterprise. At trial, among other evidence, Mummert testified that she saw Rutledge give cocaine to other defendants to sell with instructions on what the price should be, that he possessed various paraphernalia for measuring cocaine, that he often had large amounts of cash, and that he owned various firearms. Her testimony provided the government with strong evidence on the CCE,

conspiracy, and firearms counts, which is to say every charge against Rutledge except the distribution count. We assume that Rutledge's trial counsel had some idea of what evidence she would provide against Rutledge. Knowing this, counsel made a reasonable strategic choice to attack Mummert's credibility, and he did so in his cross-examination by pointing out numerous inconsistencies in her statements and contradictions between her trial and grand jury testimony. Counsel planned to lessen the impact of Mummert's evidence on the CCE, conspiracy, and firearms charges by trying to demonstrate to the jury that Mummert was an unreliable witness whose entire testimony was fabricated. This attack on Mummert's credibility, which counsel reasonably decided was necessary to counter Mummert's testimony supporting every charge except distribution, would have also affected any testimony favorable to Rutledge that she might have provided. Thus, interviewing her in an attempt to get exculpatory information for the distribution charge would have been fruitless, and counsel's decision not to do so is objectively reasonable. See Strickland, 466 U.S. at 691. Cases where an attorney has been held to be ineffective for failing to interview witnesses are distinguishable since they all involve potential witnesses who were not called at all and whose probable testimony appeared to be wholly favorable to the defendant. See, e.g., Williams, 59 F.3d at 676, 681-82; Montgomery, 846 F.2d at 409, 413-14.

We also reject Rutledge's somewhat puzzling claim that his trial counsel provided ineffective assistance by not interviewing Wright in an attempt to establish an alibi defense to the distribution charge. Like Mummert, Wright was a prosecution witness. Among his other testimony, Wright stated at trial that he purchased cocaine from Rutledge in late January, 1989. To put the point simply, Wright was unlikely to provide Rutledge with an alibi for the distribution charge given that Wright's statements were the primary evidence against Rutledge on this charge. Again assuming that Rutledge's trial counsel had some idea of Wright's testimony, counsel could have reasonably concluded that interviewing Wright would have been pointless. Unless counsel could have made Wright reverse the testimony that he was prepared to give, Wright was not going to establish an alibi for Rutledge. Counsel's attempts to discredit Wright and show that he had testified as part of a plea bargain were reasonable strategic choices, and constitute effective assistance of counsel. Rutledge has not made a substantial showing that he has been denied a constitutional right because his trial counsel was ineffective for failing to interview

Wright or Mummert, and so we will not grant a certificate of appealability on Rutledge's claim./7

C. Rutledge's Letter as an Amendment to his sec. 2255 Motion

Rutledge claims that his September 20, 1998 letter, which described the testimony of witnesses, including Bolen, that neither his trial nor sec. 2255 counsel had interviewed, was sent before the district court's decision and should be treated as an amendment to his habeas petition. Rutledge claims that the "mailbox rule" applies, and so the letter should have been considered received by the court whenever he handed it to the prison authorities, rather than October 2, 1998, after the district court's ruling, which is the date the letter was docketed by the clerk. Rutledge asks that we remand the case so that the lower court can determine when the letter was given to prison authorities and address Rutledge's additional claims.

Until a final ruling has been issued, a district court must consider a petitioner's request to amend his sec. 2255 motion, though the court need not grant the requested amendments. See Johnson v. United States, 196 F.3d 802, 805–06 (7th Cir. 1999). A district court can refuse to let the defendant amend the petition for reasons such as delay or because a defendant represented by counsel is not filing the proposed amendments through his or her attorney. Id. at 805. The district court in this case did not consider amending the sec. 2255 motion based on Rutledge's letter. However, we find that it was not required to do so. Rutledge's arguments suffer from two defects: the mailbox rule does not apply in his case, and his letter was not a motion to amend.

Houston v. Lack, 487 U.S. 266 (1988) establishes that certain notices or motions of pro se prisoners should be considered filed when these are given to prison authorities, rather than when received by the court; this is known as the "mailbox rule." Houston applied the rule to a notice of appeal, id. at 276, and it has been extended to cover various other filings, see Jones v. Bertrand, 171 F.3d 499, 501-02 (7th Cir. 1999). We have not extended the rule to motions to amend, and we need not reach that issue because the mailbox rule does not apply for another reason: Rutledge was not pro se when he mailed the letter. In adopting the mailbox rule, the opinion in Houston emphasizes the special difficulties faced by pro se prisoners. See 487 U.S. at 270 ("The situation of prisoners seeking to appeal without the aid of counsel is

unique."), 271 ("Pro se prisoners cannot take any of these precautions [to ensure timely filing]; nor, by definition, do they have lawyers who can take these precautions for them."). The opinion also repeatedly stresses the possible unfairness of forcing prisoners to rely on prison authorities to deliver their legal papers in a timely manner. Id. at 271, 273-76. However, a prisoner represented by counsel can have that attorney file whatever motions or notices the prisoner desires, and so does not need to rely on prison authorities. Therefore, we hold that the mailbox rule does not apply to prisoners who are represented by counsel. See Nichols v. Bowersox, 172 F.3d 1068, 1074 (8th Cir. 1999) ("The prison mailbox rule traditionally and appropriately applies only to pro se inmates who may have no means to file legal documents except through the prison mail system.").

Because Rutledge's letter was docketed by the clerk on October 2, the court probably received the letter either that day or the day before. Even if Rutledge's mailing reached the courthouse on October 1, this was several days after the district court's ruling. Rutledge's habeas counsel was still representing him at this time, and so the mailbox rule does not apply. Therefore, Rutledge's letter was not timely filed, and the district court was under no duty to consider whether this correspondence amended his sec. 2255 motion.

Rutledge's claim also fails for an independent reason: the letter in question is only a letter, and not a motion to amend. According to its own language, this correspondence was sent as an attempt to shame Rutledge's appointed sec. 2255 counsel into complying with Rutledge's requests and apparently to create a record to claim that the sec. 2255 counsel was ineffective. The letter is not titled as a motion, and nowhere does it state that Rutledge was seeking to amend his sec. 2255 motion. Furthermore, the letter was copied not only to the district court judge but also to the chief judge of this circuit, which would be improper if this correspondence were intended as an amendment. The rule that pro se pleadings are to be interpreted liberally, see McNeil v. United States, 508 U.S. 106, 113 (1993), cannot help Rutledge since he was represented by counsel at the time he sent the letter. Further, Rutledge is a veteran of pro se litigation, having filed (so far) roughly fourteen pleadings in this case without the aid of counsel. Rutledge knows how to file a proper motion, and he should have done so if he intended to amend his sec. 2255 petition.

For these two reasons, we find that Rutledge has not made a substantial showing that he was

deprived of a constitutional right when the district court did not consider his untimely letter as a motion to amend, and thus do not issue a certificate of appealability for this question.

D.   Rule 60(b) Motion

Rutledge argues that the district court abused its discretion by finding that Rutledge should have raised the claim that trial counsel was ineffective for failing to interview Bolen earlier and so denying Rutledge's Rule 60(b) motion. Rutledge initially mentioned Bolen in his September 20, 1998 letter, but we have already determined that this mailing did not operate as a proposed amendment to his sec. 2255 motion. Therefore, Rutledge first raised this claim involving Bolen in his Rule 60(b) motion.

Rule 60(b) relief is an extraordinary remedy granted only in exceptional circumstances. See Dickerson v. Board of Educ. of Ford Heights, Ill., 32 F.3d 1114, 1116 (7th Cir. 1994). Rule 60(b) motions cannot be used to present evidence that with due diligence could have been introduced before judgment on the motion from which the party is seeking relief. See Caisse Nationale de Credit Agricole v. CBI Industries, Inc., 90 F.3d 1264, 1269 (7th Cir. 1996). Rutledge submitted an affidavit from Bolen with his Rule 60(b) motion. Bolen claims that she is a friend of Rutledge and has known him for thirty years. She states she was with Rutledge at a bar on January 27, 1989, and so he could not have sold drugs to Wright on that day. Presently, Bolen lives at the same address as she did in 1989 and claims that her whereabouts were generally known. Given her longstanding friendship with Rutledge and the ease with which she asserts she could have been found, Rutledge should have raised his ineffective assistance claim based on his trial counsel's failure to use her as an alibi witness in his sec. 2255 motion. Thus, Rutledge has not made a substantial showing that his constitutional rights were denied.

E.  Ineffective Assistance of sec. 2255 Counsel

Rutledge's final challenge is that his sec. 2255 counsel was ineffective for failing to present an argument to the district court that trial counsel was ineffective because he did not interview the alibi witnesses mentioned in Rutledge's September 20, 1998 letter. We describe above the basic legal standards for an ineffective assistance of counsel claim; however, a few additional points are relevant here. Because this court does not take any new evidence, the defendant's attempt to show

ineffective assistance of sec. 2255 counsel is limited to the record developed below. See United States v. Penass, 997 F.2d 1227, 1229 (7th Cir. 1993). Isolated errors do not constitute ineffective assistance if the attorney's work product taken as a whole demonstrates competence. See Dahler v. United States, 143 F.3d 1084, 1086 (7th Cir. 1998). "[T]he Constitution calls for a professionally competent defense, not for the best possible defense." Holman v. Gilmore, 126 F.3d 876, 883 (7th Cir. 1997).

Even if perhaps sec. 2255 counsel should have attempted to bring additional claims of ineffective assistance based on additional potential alibi witnesses, we find that sec. 2255 counsel was not constitutionally ineffective. The distribution charge was one of only six convictions that Rutledge and his counsel challenged. Section 2255 counsel filed a comprehensive supplemental memorandum providing legal support for all of the claims in Rutledge's petition. He competently briefed and orally argued at hearings a number of open questions, such as whether Rutledge's CCE conviction and felon in possession counts should be vacated. He vigorously presented Rutledge's claim that the distribution count should be vacated because trial counsel failed to interview Mummert. Finally, sec. 2255 counsel achieved a significant degree of success on behalf of Rutledge. Three of Rutledge's convictions were vacated, and his sentence for another conviction was reduced.

We also note that sec. 2255 counsel's possible failure in not bringing the additional potential alibi witnesses named in Rutledge's September 20, 1998 letter to the attention of the district court may primarily be the fault of Rutledge. Rutledge's original motion does not mention any alibi witnesses besides Mummert and Wright, nor did Rutledge ever attempt to amend his motion to bolster his ineffective assistance claim by adding such witnesses. Rutledge might not have told his sec. 2255 counsel of these witnesses until immediately before the district court's decision. Thus, not only was sec. 2255 counsel's overall performance competent for constitutional purposes, he may not have known of these additional witnesses until any attempt to amend the motion would have been too late to aid Rutledge.

III.  Conclusion

Section 2255 provides the statutory jurisdiction for the district court to reinstate Rutledge's previously vacated conspiracy conviction. Rutledge's various claims based on ineffective assistance of counsel are without merit and do

not make a substantial showing that he was denied any constitutional rights. Therefore, the judgment of the district court is
Affirmed.


/1 In the supplemental memorandum in support of the sec. 2255 motion filed by his appointed attorney, Rutledge stated that he was unable to locate any statute authorizing the court to reinstate a vacated conviction, but did not develop this argument.

/2 Rutledge's appeal of the denial of his sec. 2255 motion normally would be untimely. The district court entered its judgment on October 16, 1998. Rutledge's counsel had already filed a motion to alter or amend the judgment on October 5, which we characterize as a Fed.R.Civ.P. 59(e) motion because it was filed within ten days of the entry of judgment. See United States v. 47 West 644 Route 38, Maple Park, Ill., 190 F.3d 781, 783 (7th Cir. 1999). The time for appeal is tolled during the pendency of a Fed.R.Civ.P. 59(e) motion. Fed.R.App.P. 4(a)(4)(A)(iv). However, Rutledge withdrew this motion on November 25, at which point the only outstanding motion was one under Fed.R.Civ.P. 60(b) which was filed on November 25. As the government pointed out to the court, the time to file a notice of appeal is not tolled during the consideration of a Fed.R.Civ.P. 60(b) motion. See Mares v. Busby, 34 F.3d 533, 535 (7th Cir. 1994). Rutledge should have filed his notice of appeal with the district court no more than sixty days after November 25. Fed.R.App.P 4(a)(1)(B). Thus, his March 16, 1999 notice of appeal would be untimely under usual circumstances and so we would consider only his appeal from the denial of his Fed.R.Civ.P. 60(b) motion and not from his sec. 2255 petition. However, the district court explicitly assured Rutledge that the court would first consider his Fed.R.Civ.P. 60(b) motion and that after the ruling on that motion Rutledge would have the opportunity to appeal. Also, Rutledge had sent the court a notice of appeal which was received on or before November 23, which would have been timely, but withdrew it after the court told him that he could appeal after the court ruled on the Fed.R.Civ.P. 60(b) motion. Because of the lower court's affirmative assurances that Rutledge would be given an opportunity to appeal after the court considered his Fed.R.Civ.P. 60(b) motion, the doctrine of unique circumstances applies, and Rutledge has not forfeited his sec. 2255 appeal. See Hope v. United States, 43 F.3d 1140, 1143 (7th Cir. 1994). The date when the clock for the notice of appeal began running was January 26, 1999, when the court denied Rutledge's Fed.R.Civ.P. 60(b) motion, and so his March 16

notice will be considered timely and we will address the issues he raises regarding his sec. 2255 motion. However, our consideration of Rutledge's sec. 2255 appeal is not an endorsement of the district court's extension of the time for filing a notice of appeal.

/3 Rutledge does not raise any constitutional challenge regarding this issue, presumably because the Double Jeopardy Clause does not bar reinstatement of a conviction on a charge for which a jury returned a guilty verdict. See United States v. Wilson, 420 U.S. 332, 344-45 (1975).

/4 Furthermore, habeas corpus is an equitable remedy, and the Supreme Court has made certain deviations from the language of sec. 2255 to apply principles of equity to federal habeas petitions. See Schlup v. Delo, 513 U.S. 298, 319-20 (1995). However, we need not stray from the language of the statute to resolve Rutledge's challenge to the district court's jurisdiction.

/5 A defendant may have a legitimate expectation that his or her total sentence will not be increased after a successful habeas petition, such that he or she probably cannot be resentenced to a total term longer than the original sentence. See United States v. Bentley, 850 F.2d 327, 328 (7th Cir. 1988). Because of the distribution and armed drug trafficker convictions, Rutledge's total sentence prior to his sec. 2255 motion was life imprisonment without the possibility of parole plus fifteen years. After his motion, his sentence was only life imprisonment without the possibility of parole based on his conspiracy conviction. Thus, no legitimate expectation of Rutledge in the finality of his sentence was disturbed when his conspiracy conviction was reinstated.

/6 The government argues that the trial transcript shows that Rutledge's trial counsel did in fact interview Mummert. The record shows that Mummert met with Rutledge's attorney to discuss paying Rutledge's legal bills. At trial, Rutledge's counsel asked Mummert whether she had told him that two of Rutledge's co-defendants were setting up Rutledge, and she testified that she could not recall any such statement. The district court sustained the prosecution's objection to any further questioning about this conversation. While the question of Rutledge's counsel does cast some doubt on whether he failed to interview Mummert regarding the substance of Rutledge's case, the record does not provide any evidence that he questioned Mummert regarding Rutledge's whereabouts on January 27, 1989. We give Rutledge the benefit of the doubt and will assume that

Rutledge's counsel did not interview Mummert in an attempt to get information that would exculpate Rutledge on the distribution charge.

/7 Rutledge's briefs to this court primarily provide discussion relevant only to the prejudice prong of the Strickland test. Since we find that trial counsel's representation of Rutledge satisfies an objective standard of reasonableness, we do not reach these arguments.