**Mark WILKINSON, Petitioner–Appellant,**

v.

**Jonathan R. WALLS, Respondent–Appellee.**

No. 01–4372.

United States Court of Appeals, Seventh Circuit.

Argued July 10, 2002.

Decided July 25, 2002.

Rehearing Denied Aug. 16, 2002.

Before COFFEY, KANNE, and ROVNER, Circuit Judges.

## ORDER

In 2001 the district court granted Mark Wilkinson a certificate of appealability on the following issue: whether it should have conducted an evidentiary hearing prior to deciding the merits of Wilkinson's claim of ineffective assistance of counsel. Because an evidentiary hearing was not required, we affirm.

By the spring of 1991 Wilkinson's relationship with his wife, Gilda, had deteriorated to the point where the couple had decided to divorce. During the divorce proceedings, Wilkinson became so frustrated with his estranged wife that he talked to several friends about killing her and even drew up written plans in case he ever decided to murder her. On May 26, 1991, Wilkinson returned the couple's three-year-old daughter to his wife's home, when he and Gilda began arguing violently over the terms of the divorce settlement. He testified that during the fight Gilda bit him on the finger, and he responded by choking her with his free hand. Wilkinson alleges that because she would not release his finger from her mouth, he tightened his grip on her throat until she stopped moving. Realizing that she was dead, Wilkinson went to his car to retrieve a roll of plastic and his written murder plans. He attempted to dispose of the body, including amputating both of Gilda's legs, but became ill. He was also interrupted when his girlfriend, concerned because Wilkinson had missed a dinner date, arrived at Gilda's home. Once Wilkinson told his girlfriend he had killed Gilda, she removed Wilkinson's daughter from the home and contacted his parents. Later that same night, Wilkinson tried to commit suicide by flying a stolen airplane into a storm. He

was arrested at a nearby airport the next morning.

In August 1992 a jury convicted Wilkinson of first degree murder and concealing a homicide, and he was sentenced to a total of 90 years' imprisonment, which was later reduced to 85 years. He exhausted his state court appeals, and in 1998 filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. The district court denied the § 2254 petition because it determined that all of Wilkinson's claims were procedurally defaulted. We, however, held on appeal that Wilkinson had indeed presented his attorney ineffectiveness claim to the state courts and therefore had not defaulted on that claim. As a result we remanded the case so the district court could examine the merits of his ineffective assistance claim. See *Wilkinson v. Cowan*, 231 F.3d 347 (7th Cir.2000).

On remand the district court addressed the one issue Wilkinson had properly preserved: whether his attorney rendered ineffective assistance when he failed to investigate certain alleged "inconsistencies" in the medical examiner's autopsy report of the victim. He argued that there are so many mistakes in the report that it is questionable whether the body the medical examiner identified as Wilkinson's wife was really her. The district court concluded that Wilkinson failed to demonstrate that he suffered any prejudice as a result of his attorney's failure to investigate the autopsy report. The district court commented that because there was so much evidence of Wilkinson's guilt, he had not shown that the outcome of the trial would have been different had his attorney investigated the autopsy report. As a result the district court denied the § 2254 petition. Two months later, however, the district court granted a certificate of appealability on the issue of whether it should

have conducted an evidentiary hearing before denying Wilkinson's § 2254 petition.

AEDPA generally bars a district court from conducting an evidentiary hearing on a claim for which a petitioner has failed to develop a factual basis unless the petitioner makes a detailed showing that a new rule of constitutional law or previously undiscovered facts warrant conducting such a hearing. See 28 U.S.C. § 2254(e)(2). But because the lack of a factual record in the state court with respect to the autopsy report cannot be attributed to Wilkinson, § 2254(e)(2) does not apply. See *Matheney v. Anderson*, 253 F.3d 1025, 1039 (7th Cir.2001). Therefore, we determine whether Wilkinson warranted an evidentiary hearing by assessing whether he demonstrated that 1) the facts, if proven, would entitle him to federal habeas relief and 2) the state courts—for reasons beyond his control—never considered the claim in a full and fair hearing. See *id.*

As the state argues, Wilkinson failed to present facts that if true would provide him with relief. His main factual assertion is that the medical examiner made several "mistakes" in the autopsy report. Specifically, he claims that 1) the medical examiner misidentified the victim's race, listing the victim as "white," although his wife was Phillipino; 2) the autopsy report described the victim's gallbladder, even though Wilkinson claims that his wife had her gallbladder removed 14 months before the murder; and 3) the medical examiner described the victim's reproductive organs as "unremarkable," despite Wilkinson's claim that his wife had two caesarean sections and two abortions. Wilkinson argues that because of these "inconsistencies" in the autopsy report, the state never proved that he actually killed his wife.

To support that conclusion, Wilkinson highlights two faults with the state's case. First, he suggests that because the autop-

sy report was so riddled with errors, it is highly possible that the medical examiner fabricated the cause of death as strangulation. He even goes so far as to offer other medical solutions for why the victim died: she choked on a piece of flesh or went into cardiac arrest unrelated to the strangulation. Alternatively, Wilkinson suggests the state failed to meet its burden because it never proved that Wilkinson killed his *wife,* just that he killed the unknown victim on whom the autopsy was performed.

■ Both of these arguments miss the mark. We remanded Wilkinson's case in order for the district court to evaluate the merits of his ineffective assistance of counsel claim, which it did thoroughly. The district court examined trial counsel's performance and found that given the overwhelming evidence of his guilt, even without a challenge to the allegedly faulty autopsy report, Wilkinson failed to show that he was prejudiced in any way by trial counsel's decision not to explore the autopsy issue. Conducting an evidentiary hearing is only necessary when a more extensive factual record must be compiled to decide an issue, *see Newell v. Hanks,* 283 F.3d 827, 838 (7th Cir.2002), which was not the case here. The district court determined that because of the other evidence of his guilt Wilkinson would not be able to establish that he had been prejudiced by the failure to investigate the autopsy report. The district court did not err in deciding that further inquiry through an evidentiary hearing was unnecessary given the facts already before it.

Wilkinson also argues that the district court incorrectly decided the merits of his ineffective assistance claim, but the district court's certificate of appealability encompassed only whether an evidentiary hearing should have been conducted. Therefore, we construe Wilkinson's quarrel with the merits of the district court's decision as a request for a certificate of appealability on the ineffective assistance claim itself. *See Rutledge v. United States,* 230 F.3d 1041, 1047 (7th Cir.2000). A certificate of appealability on this issue will be granted only if Wilkinson makes a substantial showing of the denial of a constitutional right such that reasonable jurists could debate whether his ineffective assistance claim should have been resolved differently. *See id.*

■ Applying the two-part standard announced in *Strickland v. Washington,* 466 U.S. 668 (1984), as the district court did, Wilkinson does not show that he was prejudiced by trial counsel's decision not to investigate the autopsy report. As the district court noted, the autopsy report was used only to corroborate Wilkinson's own testimony that he killed his wife by strangling her. Given this minor role of the autopsy report and the overwhelming amount of other evidence demonstrating his guilt, Wilkinson simply did not demonstrate a reasonable probability that had counsel objected to the autopsy report the outcome of the trial would have been different. *See Bell v. Pierson,* 267 F.3d 544, 558 (7th Cir.2001). Therefore, Wilkinson has not shown the substantial denial of a constitutional right with respect to his ineffective assistance claim, and a certificate of appealability will not now be granted on this issue.

Wilkinson also argues that the district court failed to follow the mandate of this court because it denied his ineffective assistance claim "without giving any consideration to the merits of that claim." He seems to be arguing that the district court somehow failed to consider the ineffective assistance theory (concerning the autopsy report) because the court focused on the trial evidence showing Wilkinson's intent to kill. He reasons that because the in-

tent-to-kill evidence was discussed by the *state* appellate court and this court's mandate instructed the district court to discuss issues raised in his *federal* habeas petition, the district court disregarded the mandate. But the district court did focus on the attorney ineffectiveness claim raised in the federal § 2254 petition. Wilkinson's confusion seems to rest with the district court's conclusion that because there was no prejudice from counsel's actions, it need not evaluate whether counsel's performance was objectively unreasonable. But we have often approved this method of analyzing the prejudice prong of the two-part *Strickland* standard before assessing counsel's performance and ending the discussion once the court determines no prejudice was shown. *See Matheney*, 253 F.3d at 1042; *United States v. Ruzzano*, 247 F.3d 688, 696 (7th Cir.2001). Thus, the district court did not ignore the mandate of this court as Wilkinson suggests.

Wilkinson also contends that the district court was incorrect to focus on the intent-to-kill evidence because the "questionable" autopsy casts doubt on whether the state proved he killed the victim and that the victim was his wife. But this argument suggests that the autopsy report was the only evidence used to convict him, which is simply not accurate. The state also presented to the jury Wilkinson's own statement to his girlfriend that he had killed his wife, the written plans to kill his wife that he had drawn up months before the murder, his statements to his friends that he was going to kill her, and his attempt to conceal his crime by hiding her body and trying to kill himself. The state presented this evidence to allow the jury to infer that he had killed his wife, and none of this evidence has been challenged. Therefore, Wilkinson has not shown that trial counsel's failure to investigate the alleged mistakes in the autopsy report had any impact whatsoever on the jury's decision to convict him.

AFFIRMED.