[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-10277

_____

D.C. Docket No. 5:14-cv-00287-CAR

MARIO WILLIAMS,

Plaintiff - Appellee,

versus

ANDREW RUSSO, CARL HUMPHREY,
JUNE BISHOP, and JAMES MCMILLAN,

Defendants - Appellants.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(January 22, 2016)

Before WILSON and WILLIAM PRYOR, Circuit Judges, and BUCKLEW,[*]
District Judge.

---

[*] Honorable Susan C. Bucklew, United States District Judge for the Middle District of Florida,
sitting by designation.

BUCKLEW, District Judge:

This is an interlocutory appeal from an order denying a motion to dismiss in a 42 U.S.C. § 1983 case.  Plaintiff/Appellee Mario Williams (an attorney) sued Defendants/Appellants (prison employees) in their individual capacities under § 1983 for opening, reading, and retaining his prisoner client's legal mail that was addressed to Williams.  Williams claimed these actions violated his Fourth Amendment right to be free from unlawful search and seizure.  The district court denied Defendants' motion to dismiss, finding that they were not entitled to qualified immunity and that Williams, as the addressee of the mail, had a privacy and possessory interest in the mail.  Defendants appeal the district court's denial of their motion to dismiss and the denial of qualified immunity.  After review, and with the benefit of oral argument, we reverse and remand.

## I.    BACKGROUND

Mario Williams brought suit against Defendants alleging that Defendants Humphrey, Bishop, and McMillan ordered Defendant Russo to open, read, and take attorney-client privileged mail addressed to him from prisoner Miguel Jackson's prison cell.  Specifically, Williams alleged that between August 8, 2012 and August 11, 2012, Russo opened, read, took, and kept privileged mail from Jackson's prison cell that belonged to Williams because it was addressed to him and marked "legal mail" and "attorney-client privileged."  Williams further alleged

2

that because Humphrey, Bishop, and McMillan failed to turn over the privileged mail to Williams and failed to discipline Russo for his actions (which were in violation of prison rules), that supervisory liability under § 1983 applied to the three "Supervisors."

Williams argued that he had a reasonable expectation of privacy and a property interest in the contents of the two envelopes labeled attorney-client privileged, which were addressed to him and located in Jackson's prison cell. Williams argued that Russo and the Supervisors violated Georgia Department of Corrections' policies and procedures in place regarding mail, and violated Williams' Fourth Amendment right to be free from the unlawful search and seizure of mail addressed to him.

Defendants moved to dismiss the amended complaint, arguing that Williams failed to state a Fourth Amendment claim because there was no precedent establishing that an attorney has a reasonable expectation of privacy in legal mail addressed to him but located in his client's prison cell and that there can be no supervisory liability because there was no underlying constitutional violation. Defendants also argued that even if Williams stated a claim, they were entitled to qualified immunity because they were acting within their discretionary authority and there was no "clearly established law" that was violated.

3

The district court denied Defendants' motion to dismiss, finding that Williams sufficiently alleged facts to support his contention that he possessed a valid privacy and possessory interest in mail addressed to him. In its order denying the motion, the district court stated:

> It is a general rule that mail is subject to Fourth Amendment protection and both senders and addressees of packages or other closed containers can reasonably expect that the government will not open them. Moreover, the courts have long recognized that an addressee has "both a possessory and a privacy interest in a *mailed* package."

[R. 37 at 5] (quoting *United States v. Hernandez*, 313 F.3d 1206, 1209 (9th Cir. 2002)). The district court acknowledged that the Fourth Amendment's proscription against unreasonable searches does not apply within the confines of a prison cell and that prison officials may open and inspect legal mail; however, the court stated they may not *read* such mail. [R. 37 at 6] (citing *Wolff v. McDonnell*, 418 U.S. 539, 577 (1974)).

The district court viewed the case as presenting two issues: (1) whether the alleged letters were considered mailed,[1] thus implicating Williams' Fourth Amendment privacy and possessory interests as an addressee, and (2) whether Williams, as an attorney, had a privacy right in attorney-client privileged mail addressed to him. Because the district court found that Williams alleged sufficient

---

[1] The issue of whether the letters were deemed "mailed" when Russo took them from Jackson's prison cell was an issue raised *sua sponte* by the district court.

4

facts to support a protectable Fourth Amendment privacy and possessory interest as an addressee, it did not address the second issue.

As to the issue of whether the letters taken from Jackson's prison cell were actually mailed (such that Williams would enjoy the rights of an addressee in letters actually placed in the mail), the district court relied on case law regarding *pro se* prisoner filings, also known as "the prison mailbox rule."  [R. 37 at 7] (citing *Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379 (1988) (finding that a *pro se* prisoner's notice of appeal was *filed* when it was delivered to prison officials for forwarding to the district court); *Garvey v. Vaughn*, 993 F.2d 776, 781 (11th Cir. 1993) (recognizing the unique disadvantage of incarcerated *pro se* prisoners for court filings and agreeing with *Houston* that the date of filing is the date the document is delivered to the prison officials)).  Thus, because Williams described the contents of the envelopes in the amended complaint as "mail," the district court found that when Russo took the letters from Jackson's prison cell, Williams had sufficiently alleged that the letters were "mailed."  Because the district court deemed the letters mailed at the moment Russo took them from the prison cell, the district court found that Williams, as an addressee of letters sent in the mail, had a protectable Fourth Amendment interest as an addressee.  In doing so, the district

5

court supported its finding by citing to cases regarding the rights of an addressee in letters and packages actually placed in the mail.[2]

The district court then went on to address Defendants' defense of qualified immunity, finding that they were not entitled to qualified immunity because if Russo (at the direction of the Supervisor Defendants) took and read mail addressed to Williams, he violated Williams' clearly established Fourth Amendment right. The district court concluded that if the officers took the mail and read the mail as Williams alleged, it was clearly established that Williams' Fourth Amendment rights were implicated.

Defendants appeal the district court's denial of their motion to dismiss. On appeal, we address: (1) whether the district court erred in determining that Williams had a right protected by the Fourth Amendment in mail addressed to him and taken from his client's prison cell, and (2) whether the district court erred in denying Appellants qualified immunity.

## II.    STANDARD OF REVIEW

---

[2] *See, e.g., United States v. Jacobsen*, 466 U.S. 109, 114 (1984) (public has legitimate expectation of privacy in letters and sealed packages in the mail, and warrantless searches of these items are presumptively unreasonable); *United States v. Van Leeuwen*, 397 U.S. 249, 251 (1970) ("It has long been held that first-class mail such as letters and sealed packages subject to letter postage—as distinguished from newspapers, magazines, pamphlets, and other printed matter—is free from inspection by postal authorities, except in the manner provided by the Fourth Amendment.").

We review a dismissal pursuant to Rule 12(b)(6) de novo, applying the same standard as the district court did.  *Hoffman-Pugh v. Ramsey*, 312 F.3d 1222, 1225 (11th Cir. 2002).  The allegations in the complaint must be taken as true and construed in the light most favorable to the plaintiff.  *Id.*

As to the defense of qualified immunity, it "shields government officials executing discretionary responsibilities from civil damages insofar as their conduct does not violate *clearly established statutory or constitutional rights* of which a reasonable person would have known."  *Courson v. McMillian*, 939 F.2d 1479, 1486 (11th Cir. 1991) (citation omitted).  Thus, qualified immunity turns on an issue of law, and our review is also de novo.  *Id.*

## III.  DISCUSSION

### A.    Whether The District Court Erred In Finding That Williams Had A Right Protected By The Fourth Amendment In Mail Addressed To Him And Taken From His Client's Prison Cell.

Defendants argue that the district court erred when it relied on the "prison mailbox rule" to determine that envelopes addressed to Williams had been "posted in the mail" at the moment that Russo took them from the prison cell.  They argue that application of the mailbox rule was error.  First, Defendants argue that the mailbox rule does not create a substantive right and second, that it does not apply here.  We agree.  The mailbox rule was created to "place *pro se* petitioners on equal footing with other litigants who are not impeded by the practical difficulties

7

encountered by incarcerated [litigants] in meeting filing requirements." *Garvey*, 993 F.2d at 780. Under this rule, *pro se* inmate filings are deemed filed with the clerk at the moment the inmate loses control over the filing by delivering it to prison authorities. *Id.* at 781. The prison mailbox rule is a procedural rule intended to put incarcerated *pro se* litigants on equal footing with other litigants and produce fairness for purposes of compliance with federal court filings.[3]

Defendants assert, and we agree, that no case has applied the prison mailbox rule to find that a letter or package had been "mailed" for purposes of creating a Fourth Amendment right, and the district court erred in doing so here. The mailbox rule only applies to (1) court filings (2) submitted by *pro se* prisoners. Neither element exists here. Jackson was represented by Williams and was not proceeding *pro se*, and the envelopes were not alleged to contain court filings. The mailbox rule does not apply.

The district court improperly relied on the mailbox rule to find that the envelopes addressed to Williams were "mailed" when Russo took them from the prison cell. The envelopes taken from the prisoner's cell addressed to Williams

_____

[3] Indeed, other circuits have held that the mailbox rule does not apply to represented inmates. *Stillman v. LaMarque*, 319 F.3d 1199, 1201 (9th Cir. 2003) (mailbox rule only applies to *pro se* inmates); *Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002), *overruled on other grounds by McQuiggen v. Perkins*, 133 S.Ct. 1924 (2013) (mailbox rule not applicable to represented inmates because counsel is capable of controlling the filing of pleadings); *Rutledge v. United States*, 230 F.3d 1041 (7th Cir. 2000) (holding that the mailbox rule is not available to a petitioner represented by counsel).

and labeled legal mail/attorney-client privileged had not been placed in the mail. Therefore, the district court erred when it found that Williams, as the addressee, had a protectable Fourth Amendment interest in the envelopes.

### B.    Whether The District Court Erred In Denying Defendants Qualified Immunity.

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 815 (2009). The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact. *Id.* (citations omitted).

For qualified immunity to apply, a defendant must prove that he was acting within the scope of his discretionary authority. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). Upon such proof, the burden shifts to the plaintiff to show a violation of a clearly established constitutional right. *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002). The burden has two parts. First, the plaintiff must allege facts, taken as true, to establish a constitutional violation. *Id.* Second, we ask whether the right was clearly established. *Id.* The court has discretion as to which of these two prongs to address first. *Pearson*, 555 U.S. at 236, 129 S.Ct. at 818.

9

Here, the parties do not dispute that Defendants were acting within the scope of their discretionary authority.  Thus, to evaluate their entitlement to qualified immunity, we ask whether Williams has alleged a violation of a constitutional right, and if so, whether the constitutional right was clearly established at the time of the alleged violation.  *Franklin v. Curry*, 738 F.3d 1246, 1249 (11th Cir. 2013).  For the reasons below, we find that Williams failed to allege a violation of a constitutional right, much less a clearly established constitutional right.

First, we look to whether Williams had a Fourth Amendment right to privacy as an addressee of envelopes marked attorney-client privilege that were in his client's prison cell but not placed in the mail.  As Defendants correctly assert, the Fourth Amendment does not apply to the contents of a prison cell.  *Hudson v. Palmer*, 468 U.S. 517, 526, 104 S.Ct. 3194, 3200 (1984).  In *Hudson*, the Supreme Court held that "society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell and that, accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell."  *Id.*

Neither Williams nor the district court has cited to case law that would establish Williams' Fourth Amendment right to privacy in the contents of envelopes found inside his client's prison cell and addressed to him.  Williams points to *Gennusa v. Canova*, 748 F.3d 1103 (11th Cir. 2014).  However, the facts

10

in *Gennusa* are very different in that they involved the physical seizure of a written statement that an officer forcibly took from underneath the attorney's hand during a pre-arrest interview of the attorney's client in an interview room. *Id.* at 1114. We found the seizure was a warrantless seizure that did not fall into any exception for the warrant requirement. *Id.* at 1115–16. In this case, however, nothing was "seized" from Williams, and the warrant requirement is not applicable to the contents of a prison cell.

Williams had no Fourth Amendment right as an addressee in envelopes seized from his client's prison cell. Because we find that Williams failed to allege a violation of a constitutional right, we need not determine whether the alleged right was clearly established.

## IV.    CONCLUSION

For these reasons, the district court's order denying the motion to dismiss is vacated, and the case is remanded. On remand, the district court is instructed to grant Defendants/Appellants Russo, Humphrey, Bishop and McMillan's motion to dismiss, finding they are entitled to qualified immunity.

**REVERSED AND REMANDED.**